## MATTER OF WILFRED B. KEENAN.

Suffolk. May 3, 1943. — September 14, 1943.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Attorney at Law. Practice, Civil,* Membership in bar, Review by Supreme Judicial Court. *Supreme Judicial Court,* Membership in bar, Superintendence of inferior courts. *Evidence,* Presumptions and burden of proof.

In determining whether a petition by a disbarred attorney at law to be readmitted to practice should be granted, considerations of public welfare are wholly dominant; the private interests of the petitioner and whether he has been sufficiently "punished" are not tests.

Disbarment of an attorney at law for bribing of jurors, even if it may not as a matter of law forever preclude reinstatement, is an adjudication of lack of moral character at the time of the offence which constitutes continuing evidence thereof so convincing as to require little less than

proof establishing a complete change of moral character before he can be granted reinstatement.

Evidence in substance showing a successful and creditable business career and good reputation of a former attorney after his disbarment for bribing of jurors, but not demonstrating any fundamental change of character since the disbarment, when weighed against the fact of disbarment and its ground as continuing and forceful evidence of lack of the moral character required of an attorney, led this court to the conclusion that his readmission to the bar would be harmful to the administration of justice and wholly incompatible with the public interest and that therefore he should not be readmitted.

This court, reviewing upon informations by bar associations and the Attorney General a judgment of the Superior Court reinstating a previously disbarred attorney to practice, having concluded that his reinstatement would be harmful to the administration of justice and wholly incompatible with the public interest and should not be granted, adjudged that the judgment of the Superior Court be annulled and that a copy of the judgment of this court be entered on the docket of the Superior Court.

THREE INFORMATIONS, filed in this court and described in the opinion.

R. T. Bushnell, Attorney General, (W. B. Luther, Special Assistant Attorney General, with him,) for the Attorney General.

E. O. Proctor, for the Bar Association of the City of Boston.

M. A. Shattuck, for Massachusetts Bar Association.

F. L. Simpson, for the respondent.

QUA, J.   Wilfred B. Keenan was disbarred by a judgment entered by a single justice of this court on October 19, 1934, after the rescript in Matter of Keenan, 287 Mass. 577. On December 28, 1939, he filed in the Superior Court a petition wherein, as later amended, he prayed that he be admitted to practice as an attorney at law in the courts of the Commonwealth.   We held that the Superior Court had jurisdiction of a petition to readmit Keenan to the practice of law notwithstanding the fact that he had been previously disbarred by this court. Keenan, petitioner, 310 Mass. 166.   Thereafter his petition for readmission was heard at length in the Superior Court and was opposed by the Bar Association of the City of Boston.   On December 31, 1941, the Superior Court ordered Keenan reinstated to the office of attorney at law in the courts of the Commonwealth.   In May, 1942, three

separate informations were respectively offered for filing in this court sitting for the Commonwealth by the Attorney General, the Bar Association of the City of Boston, and the Massachusetts Bar Association. Each information called the attention of this court to the situation created by Keenan's reinstatement by the Superior Court and to the question whether a mistake had been made affecting public confidence in the administration of justice. On June 24, 1942, we ordered that the informations be received and entered; that Keenan appear and plead to them; and that upon completion of the pleadings the three informations and the pleadings be presented to the full court for the determination of all issues raised not involving the actual trial of issues of fact. Upon the coming in of the pleadings we held that the informations presented substantial questions worthy of judicial inquiry, and that inquiry should be made by this court into the action of the Superior Court in reinstating the respondent, and for that purpose we ordered that the three informations be consolidated, and that the entire record and all papers filed in the Superior Court and the evidence there taken be transmitted to this court. *Matter of Keenan*, 313 Mass. 186. The record, papers, and evidence are now before us for inquiry into all questions of law and fact and for such action thereon as we deem appropriate. *Matter of Keenan*, 313 Mass. 186, 222.

The right to practise law is not one of the inherent rights of every citizen, as is the right to carry on an ordinary trade or business. It is a peculiar privilege granted and continued only to those who demonstrate special fitness in intellectual attainment and in moral character. All may aspire to it on an absolutely equal basis, but not all will attain it. Elaborate machinery has been set up to test applicants by standards fair to all and to separate the fit from the unfit. Only those who pass the test are allowed to enter the profession, and only those who maintain the standards are allowed to remain in it. To those who acquire and who retain the necessary qualifications is granted a monopoly of the honors and emoluments of a profession which more than any other is public in its nature and intimately connected with the high-

est functions of the State. Such a monopoly in a quasi public occupation is in no sense promoted and fostered for the personal advantage of individuals. It can be justified only on the ground that long experience has shown it to be absolutely essential to the public welfare. All this is familiar enough. It is adverted to here only for the purpose of emphasizing at the outset that in deciding a case of this kind considerations of public welfare are wholly dominant. The question is not whether the respondent has been "punished" enough. To make that the test would be to give undue weight to his private interests, whereas the true test must always be the public welfare. Where any clash of interest occurs, whatever is good for the individual must give way to whatever tends to the security and advancement of public justice.

The public aspects of this case cannot be fully apprehended without noticing its unusual history and background before entering upon a discussion of the offence for which the respondent was disbarred and of the evidence which has been thought sufficient to justify his reinstatement. On December 1, 1931, a petition was filed in this court on behalf of a committee of citizens of the Commonwealth alleging, in substance, that abuses and unprofessional conduct on the part of members of the bar in connection with actions of tort for personal injuries and property damage were creating a widespread belief that unprofessional conduct was common among members of the bar in such cases, and that such abuses were seriously shaking public confidence in the administration of justice. The prayer of the petition was for an inquiry to the end that the court might be informed and might take such action as it should deem expedient "in the interest of the public welfare." The court ordered an inquiry and appointed commissioners for the purpose, who investigated and held many hearings, and who have filed in all fifty reports during a period of about ten years in relation to various attorneys. As a result of the inquiry brought about at the instance of the committee of citizens and of reports of the commissioners nineteen attorneys, some of whom were prominent in trial work,

have been disbarred by this court for different offences, and several other attorneys have been disciplined in ways short of complete disbarment. See *Matter of Keenan*, 287 Mass. 577; *Matter of Mayberry*, 295 Mass. 155. Necessarily the activities of the commissioners and the disciplinary action of this court became generally known in the legal profession and became known also to large numbers of the public. We cannot profess to be judicially ignorant now of matters spread upon our own records of which we were fully cognizant and knowledge of which we shared with the profession and with a substantial part of the public within a few years past. *Matter of Keenan*, 313 Mass. 186, 189, 190. The respondent was one of the attorneys who was the subject of report by one of the commissioners. The respondent was disbarred after trial before a single justice of this court and after exceptions had been overruled by the full court. *Matter of Keenan*, 287 Mass. 577.

The respondent was disbarred for corruptly influencing three jurymen in a case tried in Suffolk County. From the bill of exceptions which was before us in *Matter of Keenan*, 287 Mass. 577, it appears that the corrupt influence was exerted through the payment of money by the respondent to the jurymen. At the time of his offence the respondent was mature in age and experience. He had been at the bar for twenty years. He enjoyed a large and successful trial practice. He fully understood the nature of his act. He was under no compelling necessity to do it. His act was not the result of sudden passion. It was deliberate. It required premeditation, a carefully formed plan, and continuance of a corrupt purpose long enough to carry that plan into effect. It was a sordid crime. It is difficult to conceive of any offence that could strike a more direct and deadly blow at the administration of justice than the bribing of jurymen. An attorney at law can no more plainly demonstrate his utter failure to comprehend his peculiar duty to society or his utter abandonment of the performance of that duty than by committing this offence. It has been intimated that there may be offences so serious that the attorney committing them can never again satisfy the court

that he has become trustworthy. *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 183. *Matter of Keenan*, 313 Mass. 186, 219. If there are such offences, this must be one of them. Indeed, if the respondent is readmitted to practice, it is ˙difficult to understand how a litigant whom the respondent may defeat before a jury — and who will be powerless to prevent the employment of the respondent for that purpose — can feel the assurance which he has a right to feel that the verdict against him, even if it may be erroneous, is at least honest. But whether or not as matter of law the bribing of a juryman absolutely and forever precludes reinstatement in all cases, at least disbarment for that offence is not only an adjudication of the original guilt, and therefore of lack of moral character at the time of the offence, but it also continues to be evidence of the most convincing kind against reinstatement. *Matter of Keenan*, 313 Mass. 186, 219. To overcome it and to prove that the guilty person can again inspire the public confidence necessary to the proper performance of the duties of an attorney at law requires little less than absolute assurance of a complete change of moral character. See *In re Enright*, 69 Vt. 317.

Without attempting now to say that in no case can such assurance be had through proof, for example, of long continued, unselfish, and outstanding service to mankind, or possibly in some other way, we pass to a discussion of the evidence actually presented on the hearing of the respondent's petition for reinstatement. Over sixty witnesses testified in his behalf. They include his neighbors, business acquaintances, police officers, personal physicians, bankers, clergymen, and many lawyers. In general their testimony tended to show that the respondent had obeyed the order of disbarment and had not attempted to practise law in any form; that he had courageously set himself to rebuild his fortunes through business enterprises in which he had been industrious and in the later years successful; that he had expended substantial sums of his own money in paying off the creditors of two unsuccessful early ventures, although not legally bound to do so; that he was well regarded in the business which he had last undertaken and enjoyed excellent

financial credit; and that he had kept out of trouble since his disbarment. These witnesses testified to the good reputation of the respondent and to their own belief in his integrity and in his fitness to resume practice. The record is creditable as far as it goes, particularly in the matter of business reputation and success, but it does not demonstrate any fundamental change of character. When the substance of the evidence is looked at rather than the number of witnesses, it is seen to hold forth no certainty that if the respondent were to exchange the obligations and standards of the market place for those of the bar he would not again fall a victim to the same weakness that was his first undoing. Evidence of character or reputation from friends or acquaintances is usually subject to discount for the complacency of witnesses who are willing to be accommodating and many of whom, although sincere, may not fully appreciate the necessity of protecting the public interest. It seems plain that many, though not all, of the witnesses had little or no opportunity to form the opinions they were ready to express, and a number who testified that the respondent's reputation in the community was good testified that it was good during a period which included the date of his disbarment. There was little evidence of repentance or reform. The respondent's attitude seems to have been that he would recognize the binding character of the court's decision, but that he had never in fact been guilty as charged and could not repent for what he did not admit.

We are now brought directly to the question whether in view of all the factors which must be taken into account·it is in the interest of a proper administration of public justice that the respondent be readmitted to practise law. It is difficult to see why the other attorneys who have been disbarred since the petition was filed by the committee of citizens, or at least many of those attorneys, could not produce evidence in their own behalf similar to that produced by Keenan. Presumably they also have obliging friends and acquaintances. Are they one by one to be restored to practice? Is an immense and costly effort undertaken by persons willing to engage in a difficult and disagreeable but success-

ful enterprise for the correction of evil conditions in our courts to be set at naught as fast as the five year waiting period required by rule of each applicant for readmission expires? Are we to include in this process an attorney disbarred for one of the most serious offences of which an attorney can be guilty, and is he to be reinstated upon evidence which falls far short of a guaranty against its repetition? Without attempting to assert that all the other instances are necessarily to be classed with this one, and that there may not be substantial differences growing out of the nature of the offences committed or of the evidence offered, but confining our decision to this case as outlined above, the answer is plain. It is impossible to come to any other conclusion than that the restoration to membership in the bar of the respondent Keenan would be harmful to the administration of justice, would lower confidence in the integrity of the courts and in their determination and ability thoroughly to uproot evil practices when once discovered, would discourage efforts at improvement, and would be wholly incompatible with the public interest.

It is therefore adjudged that the order or judgment of the Superior Court dated December 31, 1941, whereby Wilfred B. Keenan was reinstated to the office of attorney at law in the courts of the Commonwealth be and the same hereby is annulled, and that the clerk transmit a copy of this judgment to the clerk of the Superior Court for civil business in Suffolk County, to be by him entered upon the docket of that court.

*So ordered.*