ANTHONY A. CENTRACCHIO, petitioner.

Suffolk. December 5, 1962. — January 16, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Attorney at Law. Practice, Civil,* Membership in bar.

This court determined that a petition for readmission to the bar must be denied in the case of a former attorney who had been disbarred after having deliberately engaged, over a period of years during most, if not all, of which he was a special justice of a District Court, in fee splitting arrangements with doctors in tort cases in flagrant violation of professional ethics and of G. L. c. 221, § 43, and in fraudulent evasion of income taxes, notwithstanding that the Board of Bar Examiners in its report in connection with the petition made warranted findings of good conduct and attitude of the petitioner since his disbarment and concluded that at the date of the report he was of good moral character.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on May 15, 1961.

The case was reserved and reported by *Whittemore, J.*

*George A. McLaughlin (Charles S. McLaughlin* with him) for the petitioner.

*Joseph W. Bartlett & Claude B. Cross* for Boston Bar Association.

WILKINS, C.J.   The petitioner, a former special justice of a District Court, was disbarred by an order of this court on which judgment was entered on April 21, 1954.   On May 15, 1961, after more than five years had elapsed, he filed this petition for readmission to the bar which was referred to the Board of Bar Examiners pursuant to Rule 1 (7) of the General Rules (1952), 328 Mass. 732–733.   The petitioner received a passing mark in one of the regular bar examinations, and the board determined that he possesses "sufficient intellectual acquirements and qualifications to warrant his admission to the bar."

As required by Rule 1 (7),[1] the board conducted a hearing on the moral character of the petitioner at which the petitioner and twenty-two witnesses testified.   The report of the board contained a summary of findings of a single justice in the disbarment case.   "The respondent [the petitioner here] filed fraudulent federal income tax returns for the years 1945, 1946, 1947 and 1948.   An indictment returned in the United States District Court for the District of Massachusetts alleged understatements of taxable income in the amount of $2965.98 for the year 1945 as against a true figure of $10,052.39, and discrepancies for the three following years, which, added to the 1945 figures amounted to a stated total of $26,434.22, whereas the true figure for the four years together was $84,297.01. . . . The taxes paid for the four years were $22,027.11 less than should have been paid."   At the trial "the only defense was that

---

[1] The board shall "inquire fully into the moral character of the applicant, hear such relevant evidence as shall be presented to it, and report its findings and recommendations to the court as to the moral character, acquirements, and qualifications of the applicant.   It shall report whether or not the evidence before it affirmatively establishes that the applicant is at the date of the report of good moral character and shall state the history of the disbarment proceedings, the grounds for the judgment, and all other pertinent facts."

of a voluntary disclosure . . . .[1]   The jury found the defendant not guilty by reason of the disclosure.   The acquittal had no bearing on the inquiry into the conduct of a member of the bar as an officer of the court.''

The respondent (the petitioner here) had fee splitting arrangements with doctors and claimed as credits on his tax returns payments to them in currency.   Thirteen doctors participated in arrangements whereby each in return for referring tort cases received one half of the total of the lawyer's fee and the doctor's charges.   In the period from 1945 to 1949 there were 374 such transactions, the doctors being paid a total of $22,993.50 by check for their services and $30,718.75 in cash for the referrals.   The petitioner made a full settlement of the fraudulently withheld Federal taxes.   He resigned his judicial office during the hearing of the disbarment petition.   The single justice considered these mitigating acts and noted the petitioner's regret for his conduct, but found that the offences were so flagrant that nothing short of separation from the bar would suffice.

In its report the board made certain findings, namely: Since his disbarment the petitioner has not practised law. His principal source of income has been commissions on the sale of life and other insurance.   He holds a State broker's license.   In his dealings with two brokerage firms he has acted in good faith and has not engaged in unethical practices.   Not long after his disbarment he underwent a decided change of personality.   Whereas previously he was described as ''cocky'' and ''arrogant,'' he became quiet and remorseful.   He sought help from his pastors.   He did not attend meetings of societies to which he belonged.   He avoided his former friends.   He was not critical of the court.   He coöperated with the authorities in the hearings which led to the disciplining of the doctors. .

---

[1] The single justice's finding was, ''His sole defence was that he made a voluntary disclosure to the tax authorities in pursuance of a *policy* [italics supplied] then obtaining, whereby a taxpayer could make a disclosure . . . and in return for such disclosure the government would not prosecute him on the criminal side of the court.''   He stated that each of the four instances of tax evasion was a crime involving moral turpitude and a felony under 26 U. S. C. § 145 (b) (1946).

The board concluded that the evidence before it affirmatively established that at the date of the report, which was December 14, 1961, the petitioner was of good moral character. The final paragraph of the board's report is as follows: "The opinion in re *Keenan*, 313 Mass. 186, and earlier cases state the principle that judgment of removal from office continues to be evidence against a former officer with respect to moral character at later times. Whether, in the instant case it should be held that . . . [the petitioner's] previous offenses were so serious that good moral character at present cannot be found, the board does not consider to be within its province. It is to be noted in this connection, however, that the evidence showed that none of the tort cases on which the disbarment was based, was considered by the insurance companies to be, or suspected of being a fraudulent case and that the plaintiffs received what they were entitled to.[1] The offenses were offenses against [the] government and taxpayers generally and statutory offenses set out in statutes for the protection of the bar and the courts."

With respect to the last sentence in the foregoing quotation it should be emphasized that there was also a breach of professional duty to the clients of the petitioner, who, of course, were the patients of the doctors. As the single justice in the disbarment case found, the payments to the doctors "would ordinarily greatly exceed any sum which could legitimately be charged for medical services." And as was said of one of the doctors who referred cases to the petitioner, "The whole scheme was in violation of the trust and confidence reposed in both the lawyer and the doctor. It tended to increase expenses unduly. It was an inducement to the fomenting of litigation, to the exaggeration of claims, to false testimony, and even to the lessening of the proper interest of the doctor in promptly curing his patients, and it diverted patients from honest lawyers to the detriment

---

[1] The Boston Bar Association in its brief challenges this finding as going beyond the evidence. As we are not presently required to do otherwise, we shall accept the board's statement as made.

of the administration of justice.'' *Forziati* v. *Board of Registration in Medicine,* 333 Mass. 125, 128. The report was filed on January 23, 1962, and in accordance with General Rule 1 (7) a single justice, who had not entered the disbarment order, was designated to hear the matter. The rule provides: ''At such hearing the report shall have the weight and effect of an auditor's report in an action at law.'' This means ''prima facie evidence.'' G. L. (Ter. Ed.) c. 221, § 56. But, as was said, *supra,* by the board with respect to *Matter of Keenan,* 313 Mass. 186, 218–219, where are cited *De Propper, petitioner,* 236 Mass. 500, 501–502, and *Matter of Ulmer,* 268 Mass. 373, 397–403, the judgment of disbarment is evidence against the person removed upon his subsequent petition for readmission to the bar.

The single justice who heard this petition for readmission found the following: ''Apart from the issue reserved by the board the evidence supports its findings and recommendation . . . and the more detailed findings in the report. . . . [T]he testimony of the witnesses before the board in respect of . . . [the petitioner's] present character is adequate to support its conclusions . . . . [T]he effect on . . . [the petitioner] of the disbarment and of his subsequent conduct, self discipline and experience is such that he is now a man likely to conform to the high standards set for members of the bar. Nevertheless, his prior conduct on which the disbarment was based remains evidence of his character.'' The single justice has reported the case on the petition for readmission, the report of the board, the disbarment proceedings, and his findings, ''for decision of the issue reserved in the report of the board and for final action on the petition for readmission.''

Notwithstanding the findings of present good character, the factor of paramount significance is that the petitioner throughout most, if not all, of his years of misconduct was a judge of a court of record of the Commonwealth. He was not an inexperienced lawyer. His improper practices were neither accidental nor casual, but were deliberate and planned in detail. The Federal tax evasions, as the peti-

tioner testified at the hearing on this petition, were not confined to deducting cash payments to doctors, but for many years involved other gross understatements of income. See *Matter of Keenan*, 314 Mass. 544, 548. His relationship with one of the doctors, typical of his dealings with them all, deserved the severe condemnation recorded in *Forziati* v. *Board of Registration in Medicine*, 333 Mass. 125.

The fee splitting arrangements, as the single justice in the disbarment proceedings found, had been engaged in by the petitioner for many years prior to 1945. As that single justice also found, these arrangements were "in a flagrant and systematic violation of the ethics of the profession as well as G. L. . . . c. 221, § 43, as amended [through St. 1939, c. 197, § 1], the pertinent provisions of which are: 'No attorney at law shall, through any runner, agent or person, hereinafter called a runner, who is employed by him, solicit a person to employ him, nor shall any such runner solicit a person to employ such attorney, to present a claim for damages, or to prosecute an action for the enforcement thereof, and no attorney at law or runner shall directly or indirectly give or promise any person any money, fee, commission, profitable employment or other personal advantage in consideration of his employing such attorney on behalf of a person having a claim for damages, or of his soliciting or procuring the person who has such claim to employ such attorney to present such claim or to prosecute an action for the enforcement thereof.' "

Section 43 also provides, "A district court, upon complaint alleging violation of any provision of this section by any runner who resides or has a place of business within its judicial district, may issue an order of notice to the person complained of to show cause why he should not be ordered to desist and refrain from violation of any such provision on penalty of contempt." Thus, the petitioner in his judicial capacity might have been one who was entrusted with the duty to enforce the provisions of the very statute he had violated.

If, on this record, the petitioner, a former judge, after an interval of eight to nine years, should be readmitted to the office of attorney and held out as worthy of trust as an officer of the court, public confidence in the courts would be lessened and general respect for membership in the bar lowered. Such a decision would not be in the interest of the public welfare but would be a disservice to it. The maintenance of the integrity of the courts and of the bar compels one result, that the petition for readmission be denied.

*Petition denied.*