## IN THE MATTER OF RICHARD K. GORDON.

Suffolk. May 6, 1981. — January 13, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Attorney at Law. Practice, Civil*, Membership in the bar. *Supreme Judicial Court*, Membership in the bar.

Discussion of the factors to be weighed by this court when considering an application by a disbarred attorney for readmission to the bar. [51-56]
This court determined that a petition for readmission to the bar must be denied in the case of a former attorney who had been disbarred following his convictions of larceny and conspiracy to commit larceny, each offense having been committed while he served as a judge, notwithstanding the recommendation of the Board of Bar Overseers that the petitioner be readmitted. [56-58] NOLAN, J., dissenting; LYNCH, J., concurring.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on November 29, 1978.

The case was reported by *Kaplan*, J.

*Jerry Cohen (Mary Haskell* with him) for the petitioner.

*Barry Brown*, Special Assistant Bar Counsel.

HENNESSEY, C.J. The petitioner (Gordon), who was disbarred in 1965, seeks reinstatement to the Bar of the Commonwealth. The Board of Bar Overseers (Board) recommends his reinstatement. Bar Counsel opposes it. We conclude that Gordon should not be reinstated.

This is Gordon's second petition for reinstatement. He was disbarred on March 25, 1965, as a result of his convictions on charges of larceny and conspiracy to commit larceny, in connection with the prosecution of crimes arising out of the construction of the Boston Common underground garage. That case, which resulted in the conviction of Gordon and others, concerned highly publicized larcenies and

corruption relating to public funds. See *Commonwealth* v. *Kiernan*, 348 Mass. 29 (1964), cert. denied sub nom. *Gordon* v. *Massachusetts*, 380 U.S. 913 (1965). Gordon filed his first petition for reinstatement on September 13, 1976. After that petition for reinstatement was referred to the Board, the Board held three days of hearings and heard extensive testimony. In February, 1978, it issued its findings and its recommendation that the petition be denied.

The Board's recommendation as to the first petition was based on its conclusion that Gordon had failed to show that his resumption of the practice of law at that time would not undermine public confidence in the administration of justice or bring disrepute to the bar. The Board believed that, because Gordon was a judge at the time he committed the crimes for which he was convicted, he must satisfy a higher standard than other disbarred lawyers who seek reinstatement. Thus, although it found that Gordon had the moral qualifications necessary for the practice of law, the Board feared, in light of his former judgeship, the seriousness of the crimes for which he was convicted, and the considerable publicity that the conspiracy in which he played a part had generated, that his reinstatement would diminish public confidence in the courts and the bar.

The Board's findings and recommendations were referred to a single justice of the Supreme Judicial Court. After hearing and arguments, the single justice denied the first petition on July 19, 1978, without prejudice to a future application. The single justice accepted the Board's conclusion that Gordon had not sustained his burden of proof with respect to the effect of his reinstatement upon the bar and the public interest. In his memorandum the single justice noted the unfavorable recommendations submitted on behalf of the Massachusetts Bar Association and the Attorney General.

On November 29, 1978, Gordon filed the present petition in this court. By letter dated December 19, 1978, the court referred the petition to the Board to conduct an investigation and submit its recommendation to the court. The

Board referred the petition, whose allowance was opposed by Bar Counsel, to a panel of three members of the Board. A hearing on the petition was held on February 28, 1980, at which time the panel received letters from various persons interested in Gordon's reinstatement, a petition containing names of approximately 700 individuals, testimony from several individuals and certain other articles, documents and letters. Both Gordon and Bar Counsel thereafter submitted briefs.

The panel concluded that Gordon has met his burden of demonstrating that he has the moral qualifications, competency and learning in the law required for admission to practice law in the Commonwealth and that his resumption of the practice of law would not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest. The panel recommended that Gordon be reinstated to the Bar of the Commonwealth. Its report to the Board consisted of sixteen typewritten pages of findings of fact and its reasoning supportive of its recommendation. The Board entered an order accepting the report and adopting the recommendation for reinstatement. The matter was then referred back to this court. A single justice reserved and reported it without decision to the full court.

Gordon was convicted of larceny, a felony, and conspiracy to commit larceny, a misdemeanor, and was sentenced on the felony to the Massachusetts Correctional Institution at Walpole for a term of not more than three years or less than two and one-half years, and on the misdemeanor to a term of two and one-half years at the House of Correction at Deer Island for the county of Suffolk, to be served from and after the sentence imposed on the felony. He actually served a total of twenty months of incarceration. Gordon is now fifty-nine years old. He studied law at Suffolk University and received his LL.B. in 1947. He was admitted to practice before the Supreme Judicial Court of the Commonwealth in April, 1948, and admitted to practice before the United States Tax Court in 1954. He practiced law in the

area of Lawrence and North Andover, and in 1956 he was appointed special justice of the Third District Court at Ipswich. He was serving as a judge of that court and in various other courts at the time of the incidents which resulted in his conviction and disbarment. He has now been disbarred for approximately sixteen years.

From 1966 to 1970, he was employed as controller and bookkeeper of a small electronics corporation, American Power Devices, Inc., in Andover. He resigned when the company was advised that his presence as an officer and employee might present problems in connection with a planned public offering of the company's securities.

From 1970 to the present he has been self-employed as a tax consultant and works from an office in his home. He functions primarily as a tax consultant and does not hold himself out as practicing law but does practice before the United States Tax Court, from which he was not disbarred.

*The Several Applicable Factors.*

Several factors must be weighed in a proceeding of this kind. Supreme Judicial Court Rule 4:01, § 18 (4), 365 Mass. 696 (1974), requires that a petitioner seeking reinstatement have the burden of demonstrating that he has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth, and that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest. See *Matter of Hiss*, 368 Mass. 447, 467-468 (1975).

The Board in this case rightly considered the rule as containing two distinct requirements. The first requirement is addressed to the personal qualifications of the petitioner. In addition to showing that his absence from the practice of law has not deprived him of the competence and learning in law required for admission to practice, he must show that he has the moral qualifications required of those who have the privilege of becoming members of the bar. The second requirement concerns the effect of the petitioner's resumption of practice on the bar, the administration of justice and

the public interest.  The nub of the question is whether his resumption of practice will have an actual effect upon the integrity of the bar and thereby on the administration of justice and the public interest.  In this inquiry we are concerned not only with the actuality of the petitioner's morality and competence, but also on the reaction to his reinstatement by the bar and public.

*The Petitioner's Competence and Learning in the Law.*

No serious issue is raised as to the petitioner's competence and learning in the law.  Bar Counsel, although opposed to Gordon's reinstatement, does not dispute the Board's conclusion that Gordon qualifies in this aspect, particularly since the Board recommends that reinstatement here should be subject to appropriate requirements of continuing legal education.  We also observe that, in the event we should decide to reinstate Gordon, our order could even be conditioned upon his once more passing the bar examination.

*The Petitioner's Moral Fitness.*

As to the issue of the petitioner's moral fitness, it is clear from our examination of the Board's report that it considered in substance all of the major factors emphasized by this court in similar cases and stressed by the Bar Counsel here. Drawing principally on this court's language in *Matter of Hiss, supra,* the Board demonstrates in its report its view that Gordon's disbarment is conclusive evidence of his lack of moral character at the time of his removal from office, and that he must adduce substantial proof that he has such an appreciation of the distinctions between right and wrong as will make him a fit and safe person to engage in the practice of law. The Board correctly identified and applied (from the *Hiss* opinion at 368 Mass. at 460) five relevant factors in appraising a petitioner's moral fitness to serve as an attorney, as follows:  "(1) the nature of the original offense for which the petitioner was disbarred, (2) the petitioner's character, maturity, and experience at the time of his disbarment, (3) the petitioner's occupations and conduct in the time since his disbarment, (4) the time elapsed since the disbarment, and (5) the petitioner's present competence in legal skills."

In its findings the Board expressly treated the considerations which most concern the Bar Counsel. It considered the fact that Gordon has led a "useful and honest life" in the years since his disbarment, but at the same time did not "discount the seriousness of his crimes" and "the aggravating fact that he was a judge when he committed his crimes." The Board then applied reasoning which is consistent with the *Hiss* case in its conclusions that passage of time alone is not sufficient to warrant reinstatement, but the fact that the period of disbarment (compare the twenty-three years of elapsed time in *Hiss* with the sixteen years in this case) does not exceed some arbitrary length of time should not preclude reinstatement. We believe that these were correct statements of principles. Further, we conclude that the Board correctly reasoned (from *Hiss, supra* at 452-453) that no offense is so grave as to preclude automatically a disbarred attorney from seeking reinstatement on adequate proof. Finally, and perhaps most important, the Board considered this court's description, in *Hiss, supra* at 453, of the purpose of disbarment: "Disbarment is not a permanent punishment imposed on delinquent attorneys as a supplement to the sanctions of the criminal law — 'though it may have that practical effect. Its purpose is to exclude from the office of an attorney in the courts, for the preservation of the purity of the courts and the protection of the public, one who has demonstrated that he is not a proper person to hold such office.' *Keenan*, petitioner, 310 Mass. 166, 169 (1941)."

Applying all these principles and stressing its appreciation that the primary purpose of disbarment is preservation of the purity of the courts and protection of the public, the Board concluded that "Gordon's conduct in the fifteen years since his disbarment has demonstrated that he is now morally qualified to be permitted the privilege of practicing law in the Commonwealth."

The Bar Counsel, in stating his position as to the issue of the petitioner's moral fitness, relies upon several principles which this court has established in prior cases. He addresses

first the moral qualifications of one who seeks reinstate-
ment, as follows. The act of reinstating a disbarred at-
torney involves what amounts to a certification to the public
that the attorney is a person worthy of trust. *Centracchio,
petitioner*, 345 Mass. 342, 348 (1963). "[I]n deciding a case
of this kind considerations of public welfare are wholly
dominant. The question is not whether the respondent has
been 'punished' enough.[1] To make that the test would be
to give undue weight to his private interests, whereas *the
true test must always be the public welfare. Where any
clash of interest occurs, whatever is good for the individual
must give way to whatever tends to the security and ad-
vancement of public justice*" (emphasis added). *Matter of
Keenan*, 314 Mass. 544, 547 (1943). The petitioner's disbar-
ment is conclusive evidence of his lack of moral character *at
the time of his removal from office. Gladston* v. *McCarthy*,
302 Mass. 36, 37 (1938). Passage of time alone is insuffi-
cient to warrant reinstatement. *Matter of Hiss*, 368 Mass.
447, 460 n.19 (1975).

Bar Counsel argues persuasively from these principles
that, in considering reinstatement, the court must look be-
hind subjective testimonials as to the present good character
of the petitioner, and the most relevant objective fact is the
public record of the conduct which caused the disbarment
in the first place. With substantial accuracy, counsel iden-
tifies several aspects of such conduct which have impressed
the courts, as emphasized in the *Keenan* and *Centracchio*
cases: Was the attorney mature in age and experience? Was
his transgression an isolated instance, or did he continually
flout the law in a course of recurring conduct? Were the of-
fenses committed relatively minor violations or of major
significance? Was his act the result of sudden passion, or
was it deliberate, requiring premeditation, a carefully
formed plan, and continuance of a corrupt purpose long
enough to carry that plan into effect? Was he driven to the

---

[1] Gordon offered a number of letters from various people favoring
reinstatement. Most of the letters were based on the premise that Gordon
had "suffered enough" or had been "punished enough."

offenses by compelling financial necessity or were they the result of some internal weakness of character?

Bar Counsel urges that all of these questions must be answered unfavorably to Gordon. Consequently, the petitioner's moral qualifications are to be judged in totality on the basis of his conduct since his disbarment, together with the evidence of his lack of moral character at the time of his offenses.

It is clear that the Board not only applied correct principles but also that it had before it what it concluded was substantial evidence to support its conclusion as to Gordon's moral fitness. We accord significant weight to the findings of the Board, since its members, not this court, received the evidence and could appropriately judge its credibility. We are also cognizant that the final decisions as to Gordon's moral fitness, as with all ultimate aspects in this proceeding, are for this court to make since this proceeding concerns the administration of justice and as such is deeply affected by considerations of policy and public interest. Nevertheless, in light of our conclusions concerning the "effect of reinstatement" of Gordon, we need not consider further the Board's conclusions as to Gordon's moral fitness.

*Effect of Reinstatement.*

The most difficult question to answer concerns the effect of Gordon's reinstatement on the bar, the administration of justice and the public interest. Even were we to assume that there is convincing evidence of moral qualification, competency, and learning such as to give substantial assurance that Gordon would not himself commit any act that would reflect adversely on the public interest, this added issue of the "effect of reinstatement" raises the question whether the bar or the public would regard reinstatement as an indication that the original offense was not viewed with sufficient gravity. The Board correctly states that "the object is deterrence, as well as protection of the good name of the legal profession." It was its consideration of the "effect of reinstatement" factor which led the Board to recommend that Gordon's first petition for reinstatement be denied.

The Board now points out, in recommending reinstatement, that, unlike the reaction to the prior petition, there is now no recorded opposition to reinstatement of Gordon. The opposition of the Massachusetts Bar Association and the Attorney General, which undoubtedly had weight in defeating the prior petition, is no longer present. On the contrary, the Essex Bar Association, which includes under its aegis the community in which Gordon lives, has gone on record as favoring his reinstatement. Many other persons supported his request, including a number of responsible persons and office holders. No one, other than Bar Counsel, expressed opposition to reinstatement.

The Board decided that its conclusions concerning Gordon's present professional and moral fitness for the bar should prevail over the possibility that some segments of the public may still remember the scandal in which his offenses played a part. The Board reasoned that, in terms of public perception and acceptance of a reinstatement of an attorney, there is no inherent value in a twenty or twenty-five year period of disbarment as compared to the period (also lengthy; sixteen years) of disbarment here. Nevertheless, even while recommending reinstatement, the Board expressed concern about the matter of the effect of reinstatement in the public perception. Against the broad support for Gordon's reinstatement, and against its favorable findings as to Gordon's present moral fitness and competence, the Board considered, and was troubled by, the fact that public memory can be revived by the news media or other publications.

The nature of the offenses is significant. Gordon was convicted of crimes which were part of the "Boston Common Garage" cases, a notorious saga of corruption and theft. See *Commonwealth* v. *Kiernan*, 348 Mass. 29, 44-46, 48-50 (1964). He was convicted of larceny (a felony), and conspiracy to commit larceny (a misdemeanor), for participating in a scheme devised by the chairman of the Massachusetts Parking Authority to obtain $310,000 in return for the contract to build the Boston Common underground

garage.  As part of this conspiracy, Gordon received three checks totalling $100,000 as payment for legal services he never performed.  Gordon subsequently gave $85,000 to one of his coconspirators.  As treasurer of the Granite State Realty and Construction Co., Inc., Gordon accepted a $40,000 check for erecting four construction buildings and a $25,000 check for setting up fences under a fictitious subcontract.  No work was done under this subcontract.  Gordon and a coconspirator endorsed these checks and deposited them in the Granite account.  Subsequently Gordon and the same coconspirator withdrew over $45,000 from this account.[2]

It is also of special significance that Gordon committed his crimes while serving as a judge.  At the time of his crimes, Gordon had been a member of the bar for eleven or twelve years and a special justice of the Third District Court at Ipswich for three or four years.  Despite his experience and maturity, Gordon used his position as an attorney and judge to conceal the payment of kickbacks.  The public interest in the integrity of the bar and the administration of justice requires there be a higher standard for reinstatement where disbarment was prompted by misconduct while a judge.  The public is entitled to expect that the legal system will be properly administered.  This expectation is greater when the attorney guilty of misconduct is also a judge at the time of his crimes.  Thus, if "the petitioner, a former judge . . . should be readmitted to the office of attorney and held out as worthy of trust as an officer of the court, public confidence in the courts would be lessened and general respect for membership in the bar lowered.  Such a decision would not be in the interest of the public welfare, but would be

---

[2] As we read the record, Gordon admitted that he delivered "large sums of cash to an individual without obtaining receipts, . . . [but he claims] that he thought that this was all right."  Although Gordon denies "any guilt in [his] case," for the purposes of reinstatement he has agreed that "on all the evidence before the Superior Court, an inevitable result was reached on the available record."  In this court, Gordon, like Hiss, did not contend that he should be permitted to retry the issue of guilt in reinstatement proceedings.  See *Matter of Hiss*, 368 Mass. 447, 450 (1975).

a disservice to it. The maintenance of the integrity of the courts and of the bar compels one result, that the petition for readmission be denied." *Centracchio, petitioner*, 345 Mass. 342, 348 (1963).

We have given respect and close attention to the conclusions of the Board of Bar Overseers. The Board is dedicated to the public interest, as commissioned in the words of the rules of this court, and as demonstrated in the high standards of performance of the members of the Board in the several years of its existence. The Board decided that its conclusions as to Gordon's present fitness were sufficient to justify an affirmative position on the issue of the public effect of reinstatement, although it conceded an element of speculation in the latter factor.

Thus the Board showed a receptive and compassionate attitude toward Gordon's efforts since his disbarment. We agree that the effect of this decision upon Gordon and his future is important, but the effect upon the interests of the public and its confidence in the bar is of overriding importance. Further, the ultimate duty of decision rests with this court. In recent years there has been widespread and frequent publicity about corruption related to public contracts. We think that public perception of a reinstatement of Gordon at this time would in high probability reflect badly upon the reputation of the bar for integrity, particularly because Gordon was a judge who was involved in notorious crimes concerning public contracts. Accordingly, Gordon's petition for reinstatement as a member of the Massachusetts bar is denied.

*So ordered.*

LYNCH, J. (concurring). I agree with the conclusion of the majority that the public perception of a reinstatement of Gordon, at this time, would in high probability reflect badly upon the reputation of the bar for integrity. I share the concern expressed in the dissent, however, that the result

reached here appears inconsistent with *Matter of Hiss,* *supra*. To the extent that a disparity exists between the treatment of Gordon and Hiss, I believe that the course we follow here is the correct one.


NOLAN, J. (dissenting). In 1975, this court unanimously granted the petition for reinstatement of an unrepentant but convicted perjurer in spite of an adverse recommendation by the Board of Bar Overseers. *Matter of Hiss,* 368 Mass. 447 (1975). In this case, the Board of Bar Overseers recommends the reinstatement of Gordon, but the court denies his petition.

In trying to gauge the impact of Gordon's readmission to the bar on the public, the court reminds us of the scandal of the Boston Common Garage cases and describes them as "a notorious saga of corruption and theft." However, by comparison with the national notoriety of the Hiss trial (see *United States* v. *Hiss,* 185 F.2d 822 [2d Cir. 1950], cert. denied, 340 U.S. 948 [1951]), Gordon's prosecution was only a local media attraction. Gordon's conduct for which he was convicted was reprehensible and all the more so because he was a judge at the time, but, to his credit, he does not remain obdurate and unregenerate while protesting his innocence. I find it most difficult to understand the reason for the difference in treatment between Hiss and Gordon.

I would allow Gordon's petition for reinstatement on condition that he pass the Massachusetts bar examination.