## In the Matter of Max J. Allen.

Suffolk. March 5, 1987. — July 9, 1987.

Present: Hennessey, C.J., Liacos, Nolan, Lynch, & O'Connor, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension. *Supreme Judicial Court*, Membership in the bar. *Practice, Civil*, Membership in the bar.

Discussion of the standards applied by this court in considering a petition for reinstatement of an attorney who has been disbarred or indefinitely suspended. [421-422]

This court ordered the reinstatement of an attorney who, on November 9, 1978, had been indefinitely suspended from the practice of law following his conviction on indictments charging him with conspiracy to commit arson and conspiracy to cause a building to be burned with intent to defraud the insurer thereof, where the record warranted the single justice's findings that "[b]ar counsel and the Board [of Bar Overseers] agree that the petitioner has the necessary moral character, competency and learning" and that "there is no serious issue raised . . . concerning the protection of the public," and where this court concluded that his reinstatement posed no threat to the intergrity of the bar. [423-426] Hennessey, C.J., dissenting.

Petition filed in the Supreme Judicial Court for the county of Suffolk on September 4, 1984.

The case was reported by *Abrams*, J.

*Ronald F. Kehoe* for the petitioner.

*Bonnie H. MacLeod-Griffin*, Assistant Bar Counsel (*Daniel J. Klubock*, Bar Counsel, with her).

Liacos, J. This case is here on the reservation and report, without decision, of a single justice of this court. The issue presented is whether Max J. Allen (petitioner) should be reinstated as a member of the bar of the Commonwealth, having been indefinitely suspended from the practice of law on November 9, 1978.[1] S.J.C. Rule 4:01, §§ 4, 12, 365 Mass.

[1] The suspension was vacated on April 10, 1979, pending appeal of the criminal conviction which led to these disciplinary proceedings. *Matter of*

697, 704 (1974). The petitioner filed for reinstatement, after a lapse of five years, on September 4, 1984, pursuant to S.J.C. Rule 4:01, § 18 (1).[2] After hearing, a panel of the Board of Bar Overseers (panel) recommended that the petitioner not be reinstated, and the Board of Bar Overseers (Board) adopted the panel's recommendation, both by divided votes. These votes were filed with the court on May 15, 1985. On February 28, 1986, after hearing, the single justice indicated that she would order the petitioner's reinstatement on September 5, 1986, unless the Board objected. The Board, again by a divided vote (five-to-two), objected to petitioner's reinstatement at this time. In this posture, the matter was reported.

The facts underlying the petition may be described briefly. In October, 1977, the petitioner, Michael R. Cappiello (also an attorney), Martin Koplow, and George Lincoln were indicted for conspiracy to commit arson and for conspiracy to cause a building (50 Symphony Road in Boston) to be burned with intent to defraud the insurer of the building. Lincoln testified for the prosecution. Allen, Koplow, and Cappiello were tried together and convicted.[3]

---

*Allen*, 1 Mass. Att'y Discipline Rep. 11, 14 (1979). The suspension was reimposed on October 13, 1981, "from the date of his initial temporary suspension on November 9, 1978." *Matter of Allen*, 2 Mass. Att'y Discipline Rep. 3, 5 (1981).

[2] Rule 4:01, § 18 (1), of the Rules of the Supreme Judicial Court, as appearing in 381 Mass. 791 (1980), provides, in relevant part: "[A]n attorney who has been disbarred or suspended for an indefinite period . . . may not be reinstated otherwise than upon his petition filed in this court after the expiration of at least five years from the effective date of the order of disbarment [or] suspension." The single justice had ruled that the period of time between April 10, 1979, and January 31, 1980 (when the petitioner was not under suspension), was not to be included in the five-year computation, 2 Mass. Att'y Discipline Rep., *supra* at 5 & n.1; the filing of petition for reinstatement in September, 1984, was timely in light of this method of computation.

[3] The convictions were affirmed. The facts and rulings are set forth in *Commonwealth* v. *Allen*, 379 Mass. 564 (1980). Cappiello was disbarred. *Matter of Cappiello*, 3 Mass. Att'y Discipline Rep. 35 (1982). There was no fire set in this instance, but other conspirators, including two attorneys, in another conspiracy, did cause fires in what became known as the "arson for profit" conspiracies affecting the Symphony Road area. See *Common-*

On this record, it appears that Allen, unlike the other attorneys, was indefinitely suspended and was not disbarred because of strong mitigating evidence presented to the board and to the single justice at the time.[4] 2 Mass. Att'y Discipline Rep., *supra* at 4. The Board (and bar counsel) now feel, however, that reinstatement of the petitioner still is not warranted. On March 1, 1985, a three-member panel of the Board gave careful consideration to the requirements of S.J.C. Rule 4:01, § 18 (5), as amended by 394 Mass. 1106 (1985), which states, in part: "On any petition the Board, the hearing committee or panel shall promptly hear the respondent-attorney who shall have the burden of demonstrating that he has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth, and that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest."

The panel considered also our precedents and the factors pertaining to the petitioner and concluded, by a two-to-one vote,[5] that "Allen should not be readmitted *at this time* because of the seriousness of the crime for which he stands convicted and the fact that *only six years have passed since he was suspended*" (emphasis supplied).

---

wealth v. *Davis*, 13 Mass. App. Ct. 179 (1982). The two attorneys involved in *Davis*, George S. Davis and Dennis Liakos have been disbarred. See *Matter of Liakos*, 3 Mass. Att'y Discipline Rep. 130 (1982); *Matter of Davis*, 3 Mass. Att'y Discipline Rep. 51 (1982).

Allen was sentenced to two years in a house of correction and a fine of $10,000; Cappiello, two and one-half years and $10,000; and Koplow, eighteen months and $5,000. Allen served one year and has paid the fine imposed.

[4] This action by the single justice was consistent with the recommendations of the panel of the Board, the Board, and of bar counsel. The Board's recommendation included the further recommendation that petitioner have "the right to apply for reinstatement" five years from the date of his initial temporary suspension.

[5] One member of the panel felt that petitioner had met the criteria for reinstatement. All members agreed that the case "is a close one." All members of the panel concluded also that the petitioner "has the competence and learning in the law required for admission."

The only issue which divided the panel in 1985 was "whether readmission of Allen to the Bar at *this time* would be 'detrimental to the integrity and standing of the Bar, the administration of justice, or to the public interest' " (emphasis in original). The majority then concluded: "[T]he public approbation [*sic*] associated with the crime Allen committed requires that more time pass before reinstatement. His was a crime of intent, of careful forethought, which might have had the most grievous of consequences for the people who lived in the apartments Allen owned or to others. The crime was not motivated by anger, or passion, but by a desire for profit. It was not a matter of negligence, or disorganization. The moral consequences of what Allen was doing could not have escaped him and there was no evidence that Allen was under any disability at the time. The majority believes that public confidence in the integrity of the Bar requires a longer period of suspension."

Bar counsel, at a hearing before the single justice on August 7, 1985, conceded that the panel's single ground for opposition was "that the nature of the crime for which he was convicted was such that it might undermine the public's confidence and integrity of the Bar and the administration of justice." The petitioner's competence and moral fitness were conceded. Thus, the single justice, having waited a period of time, concluded on February 28, 1986, that: "Bar counsel and the Board agree that the petitioner has the necessary moral character, competency and learning for readmission. The more difficult issue concerns the second requirement, the public interest. This interest includes two elements relating to the public: its protection and its perception. . . . There is no serious issue raised here concerning the protection of the public. The concern of Bar Counsel and the majority of the Board is with the element of public perception. The majority of the Board concluded that the public opprobrium associated with the crime for which respondent was convicted requires that more time pass before reinstatement."

Further, the single justice ruled: "I think that some more time should elapse before the reinstatement petition should be allowed. I conclude that I shall allow the reinstatement petition

on September 5, 1986, unless the Board files an objection" (footnote omitted). Subsequently, the Board responded on September 12, 1986,[6] that, by a vote of five-to-two (the minority being for reinstatement), the petitioner's reinstatement should be denied for the same reasons stated by the panel in March, 1985.[7]

We turn now to consider briefly the standard of our review. "[I]n deciding a case of this kind considerations of public welfare are wholly dominant. The question is not whether the respondent has been 'punished' enough. To make that the test would be to give undue weight to his private interests, whereas the true test must always be the public welfare." *Matter of Keenan*, 314 Mass. 544, 547 (1943).

Ordinarily, this court gives deference to the recommendations of the Board, but "the ultimate duty of decision rests with this court." *Matter of Gordon*, 385 Mass. 48, 58 (1982). See *Centracchio, petitioner*, 345 Mass. 342, 346-347, 348 (1963).[8] Although we have suggested that certain offenses are so serious that an "attorney committing them can never again satisfy the court that he has become trustworthy," *Matter of Keenan, supra* at 548-549, we later recognized that no offense

---

[6] On August 1, 1986, the Board filed a motion to extend the time for filing its objection from September 5, to September 12. The motion was allowed.

[7] The Board and bar counsel, in their brief, do not contest petitioner's moral qualifications, competency, and learning, but continue to oppose reinstatement solely on public perception grounds.

[8] Both *Gordon* and *Centracchio, supra*, involved petitions for reinstatement of judges who had been disbarred. The court, despite favorable recommendations for reinstatement, declined to reinstate them, relying primarily on the impact on the public perception of the bar, if disbarred judges were reinstated. "It is also of special significance that Gordon committed his crimes while serving as a judge. . . . The public interest in the integrity of the bar and the administration of justice requires there be a higher standard for reinstatement where disbarment was prompted by misconduct while a judge." *Gordon, supra* at 57. See *Centracchio, supra* at 348. The petitioner in this case was not a judge, nor was he disbarred. Thus, neither *Gordon* nor *Centracchio* is controlling. We note also that in *Keenan, supra*, the attorney was disbarred for bribery of three members of a jury, a crime that, unlike this case, went directly to the essence of the integrity of the judicial system. See *Keenan, supra* at 548-549.

"is so grave that a disbarred attorney is automatically precluded from attempting to demonstrate through ample and adequate proofs, drawn from conduct and social interactions, that he has achieved a 'present fitness' (*In re Kone*, 90 Conn. 440, 442 [1916]) to serve as an attorney and has led a sufficiently exemplary life to inspire public confidence once again, in spite of his previous actions." *Matter of Hiss*, 368 Mass. 447, 452 (1975).

Consistent with this view, other attorneys who have been indefinitely suspended have been reinstated to practice on appropriate proof. See *Matter of Latour*, S.J.C. No. 77-33 BD (Oct. 2, 1984) (attorney convicted of bribery reinstated after seven years [1 Mass. Att'y Discipline Rep. 176 (1977)]); *Matter of Masuck*, 3 Mass. Att'y Discipline Rep. 135 (1982) (attorney convicted of mail fraud and gaming offenses reinstated after seven years [1 Mass. Att'y Disc. R. 212 (1979)]). See also *Matter of O'Brien*, 2 Mass. Att'y Discipline Rep. 166 (1980), 168 (1981) (attorney convicted of conspiracy to destroy a dwelling house reinstated after one-year suspension).

As to the standards of reinstatement, we have stated the factors to be considered as follows: "In judging whether a petitioner . . . has demonstrated the requisite rehabilitation since disbarment, it is necessary to look to (1) the nature of the original offense for which the petitioner was disbarred, (2) the petitioner's character, maturity, and experience at the time of his disbarment, (3) the petitioner's occupations and conduct in the time since his disbarment, (4) the time elapsed since the disbarment, and (5) the petitioner's present competence in legal skills" (footnote omitted). *Matter of Hiss, supra* at 460.[9]

---

[9] The cases to which we refer have, on the whole, dealt with the issue of reinstatement of a disbarred attorney. We have not considered whether the standard for an attorney indefinitely suspended, as was this petitioner, ought be less severe. Rule 4:01, § 18 (5), of the Supreme Judicial Court, appears to draw no distinction. Therefore, we assume, without deciding, the burden on a petitioner who has been indefinitely suspended to be the same when he seeks reinstatement.

We turn now to the evidence pertaining to this petitioner. His personal history, as stated by the panel of the board recommending his suspension, is as follows: "He was graduated from the University of Texas in 1941 and the Harvard Law School in 1949 and received a Master of Laws degree from Boston University in 1951. He was commissioned an ensign in the United States Naval Reserve in 1944 and remained in the United States Naval Reserve until 1971 when he retired as a commander. From 1949 until his suspension in 1978 Respondent pursued an active legal career as a sole practitioner, with increasing specialization in estate planning. Respondent has served since 1977 as honorary consul for India and has been active in professional and community affairs. He is married and has two sons, one of whom is a lawyer. . . . During Respondent's twelve month incarceration in the House of Correction, Respondent became active in counseling and teaching inmates and volunteered for work as a farm laborer. He wrote a pamphlet advising new inmates as to their conduct and attitude while incarcerated . . . . Since his release from prison Respondent has continued to work with and counsel prisoners at the House of Correction. Respondent's present activities consist of managing his real estate and performing his duties as Indian consul."

The panel, considering the petition for reinstatment, added, as to his character since conviction and suspension: "Allen presented a large number of character witnesses, many of them persons eminent in the law and in business. They uniformly testified as to their belief in Allen's high moral character and their confidence that, should he be reinstated, he would be an upstanding member of the Bar. Among the witnesses were a former Chief Justice of our Superior Court with numerous close family members heavily invested in the bar, the Dean of a well recognized nationally known law school, a lawyer-president of a large local financial institution, a Register of Deeds, a former legislator and a former Assistant attorney general. The Assistant Deputy Superintendent of the Plymouth House of Correction also submitted a letter describing Allen's service as an instructor in the facility's educational program

after his release. . . . There was also considerable evidence of Allen's extensive involvement with Boston-area Indian social and cultural organizations and with the government of India. Since his release from incarceration, Allen has served as *de facto* counsel [consul] to the government of India and has been the chairman of the executive committee of the largest Indian government sponsored foundation in this region, the Bharatiya Vidya Bhavan, on whose advisory board sit prominent local, national and international figures. It is from this involvement that the Panel received a letter from the former ambassador to India, John Kenneth Galbraith, supporting Allen's reinstatement. Through the testimony of Indian professor of mathematics, Mahesh Sharma, the local Indian immigrant community has spoken on behalf of Allen's reinstatement. The support of Allen by the local Indian community has been a constant throughout his incarceration and during the period of his suspension. Allen testified that should he be readmitted, it is his intent to join the offices of his son, Peter J. Allen, and to engage in the practice of immigration law. Both Allen and his son testified as to Allen's extensive efforts to keep abreast of developments in the field of immigration law. In order to prepare himself for possible reinstatement, Allen recently took and passed the Ethics portion of the Massachusetts Bar Examination. The Panel has no reason to doubt that Allen has the competence and learning in the law required for admission to practice law in this Commonwealth. There was also considerable evidence that persons who had directed clients to Allen before his suspension would do so after his reinstatement and that many of Allen's former clients would return to him were he to resume the practice of law."

No opposition to reinstatement was voiced by the office of the Attorney General, which prosecuted the criminal cases, nor by any other witness.[10] The single justice has found that

---

[10] Subsequent to oral argument, the court has received seven letters pertaining to this matter. Five were opposed to petitioner's reinstatement, one in favor. One letter expressed no opinion. These letters are not part of the record, but we have given them their due weight.

"[b]ar counsel and the Board agree that the petitioner has the necessary moral character, competency and learning for readmission." These findings are warranted by the record. Further, the single justice found "[t]here is no serious issue raised here concerning the protection of the public." We agree.

Thus, we are faced with the picture of a man who, as a member of the bar since 1949, had an unblemished record as an attorney and a member of the community. He committed serious crimes, but crimes not directly related to the practice of law. He has served his sentence, paid his fine, and has set about to reconstruct his life. He is now in his sixties, and almost ten years have elapsed since his suspension. He has regained the respect of those who know him and have dealt with him. He poses no threat of recidivism or to the integrity of the bar. He has expressed his sorrow and regret for his misconduct.[11]

We recognize that a few members of the public may be perturbed if petitioner is reinstated. We cannot, however, accept the position that, so long as *any* member of the public objects, a petition for reinstatement ought be denied. "A fundamental precept of our system (particularly our correctional system) is that men can be rehabilitated. 'Rehabilitation . . . is a "state of mind" and the law looks with favor upon rewarding with the opportunity to serve, one who has achieved "reformation and regeneration." ' *March* v. *Committee of Bar Examiners*, 67 Cal. 2d 718, 732 (1967). Time and experience may mend flaws of character which allowed the immature man to err. The chastening effect of a severe sanction such as [indefinite suspension] may redirect the energies and reform the values of even the mature miscreant. There is always the potentiality for reform, and fundamental fairness demands that the disbarred attorney have opportunity to adduce proofs." *Matter of Hiss*, 368 Mass. 447, 454 (1975).

We conclude the "proof" to have been made. The case is remanded to the Supreme Judicial Court for the county of

---

[11] While we have not made repentence a prerequisite of reinstatement, see *Matter of Hiss, supra* at 457, 459, we believe that repentence is a relevant factor in determining the rehabilitation of a petitioner.

Suffolk for entry of an order reinstating the petitioner as a member of the bar of this Commonwealth.

*So ordered.*

HENNESSEY, C.J. (dissenting). I dissent. I agree with the panel of the Board of Bar Overseers which (in a split vote opposing reinstatement of the petitioner) characterized the case as "a close one." The court has analyzed the petitioner's request for reinstatement in accordance with criteria we have established in prior cases. In so doing, the court has placed emphasis on the strong evidence of the petitioner's rehabilitation. Despite this evidence, I would deny reinstatement because of the extremely serious nature of the crimes for which the petitioner stands convicted.