IN THE MATTER OF MICHAEL R. CAPPIELLO.

Suffolk. September 9, 1993. - November 4, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Attorney at Law*, Disbarment. *Supreme Judicial Court*, Membership in the bar. *Practice, Civil*, Membership in the bar.

A former attorney, suspended in 1978 and disbarred in 1982, following convictions of conspiracies to commit arson and to cause a building to be burned with intent to defraud an insurer, sufficiently demonstrated before a panel of the Board of Bar Overseers that he possessed the moral qualifications, competency, and learning in law required for admission to practice law and that his resumption of the practice of law would not be detrimental to the integrity and standing of the bar, and his petition for reinstatement as an attorney was granted [343-346]; in circumstances where the petitioner had passed the professional ethics portion of the Massachusetts bar examination in 1992 and had otherwise demonstrated his learning and competency in the law, it was not necessary that he retake the entire Massachusetts bar examination prior to reinstatement [346].

PETITION filed in the Supreme Judicial Court for the county of Suffolk on May 5, 1992.

The case was reported by *Abrams*, J.

*Walter H. McLaughlin, Sr.* (*Susan C. Schlener* with him) for the petitioner.

*Arnold R. Rosenfeld*, Bar Counsel.

LYNCH, J. This case is before us on a reservation and report, without decision, of a single justice of this court, that states: "I reserve and report this petition for reinstatement of [the petitioner] on the Record of Proceedings before me. I also report the question whether an attorney who has been disbarred and had his or her name stricken from the Roll of Attorneys in the Commonwealth of Massachusetts must take the full bar examination as well as the examination for pro-

fessional responsibility before his or her name may be entered on the Roll of Attorneys." The petitioner was temporarily suspended on November 3, 1978,[1] and disbarred on March 18, 1982,[2] following his convictions of conspiracy to commit arson and conspiracy to cause a building to be burned with intent to defraud an insurer. *Matter of Allen*, 400 Mass. 417, 418 (1987). Pursuant to S.J.C. Rule 4:01, § 18 (1), as appearing in 381 Mass. 791 (1980), the petitioner filed for reinstatement on May 5, 1992. After a hearing on September 14, 1992, by a three-member panel (panel) of the Board of Bar Overseers (board), two members recommended that the petitioner be reinstated, with one member dissenting. On January 11, 1993, the board adopted the panel's report and recommendation in favor of reinstatement of the petitioner and filed its recommendation in the county court.

The underlying facts are described briefly.[3] The petitioner, Max J. Allen (also an attorney), Martin Koplow, and George Lincoln were indicted for conspiracy to commit arson and conspiracy to defraud an insurer of a dwelling house located at 50 Symphony Road in Boston.[4] Lincoln testified for the prosecution and later pleaded guilty pursuant to a plea-bar-

---

[1]*Matter of Cappiello*, 1 Mass. Att'y Discipline Rep. 54 (1978), *S.C.*, 2 Mass. Att'y Discipline Rep. 33 (1980).

[2]*Matter of Cappiello*, 3 Mass. Att'y Discipline Rep. 35 (1982). At the time of the hearings, the petitioner's wife was seriously ill in Florida. On the advice of counsel, he did not appear at the discipline hearing before the panel. Counsel believed that the petitioner would receive the same sanction as his codefendant, indefinite suspension, since the crime and circumstances were the same. However, the petitioner received a recommendation and an order of disbarment.

[3]The facts and rulings are set forth in further detail in *Commonwealth* v. *Allen*, 379 Mass. 564, 565-567 (1980).

[4]The conspiracy was abandoned without any attempt to burn the building. However, in another conspiracy, two attorneys did cause fires in what became known as the "arson for profit" conspiracies in the Symphony Road area. *Matter of Allen*, 400 Mass. 417, 418-419 n.3 (1987). These two other attorneys were also disbarred. See *Matter of Liakos*, 3 Mass. Att'y Discipline Rep. 130 (1982); *Matter of Davis*, 3 Mass. Att'y Discipline Rep. 51 (1982).

gaining arrangement. The remaining three were tried together and convicted.[5] Allen was indefinitely suspended following his convictions.[6] His petition for reinstatement was granted in 1987.[7]

When seeking reinstatement, the petitioner has a two-prong burden. He must demonstrate: (1) that he has the moral qualifications, competency, and learning in law required for admission to practice law in the Commonwealth; and (2) that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest.[8] See S.J.C. Rule 4:01, § 18 (5), as amended, 394 Mass. 1106 (1985); *Matter of Gordon*, 385 Mass. 48, 51 (1982); *Matter of Hiss*, 368 Mass. 447, 467-468 (1975). Based on the undisputed evidence, the panel unanimously found that the petitioner had passed the first threshold for reinstatement demonstrating that he has the moral qualifications, competency, and learning in the law required for admission to practice law in this Commonwealth. Following the precedent of *Matter of Allen*, *supra* at 425, and factors pertaining to the petitioner, the panel concluded by a two-to-one vote that the reinstatement of the petitioner is compelled, noting that the petitioner has waited longer than Allen to apply for reinstatement and that

---

[5]The petitioner was sentenced to serve two and one-half years in a house of correction and fined $10,000; Allen was sentenced to serve two years and fined $10,000; Koplow was sentenced to serve eighteen months and fined $5,000.

[6]*Matter of Allen*, 2 Mass. Att'y Discipline Rep. 3, 5 (1981).

[7]See *Matter of Allen*, *supra* at 417. See also *Matter of Allen*, 5 Mass. Att'y Discipline Rep. 10, 14 (1987). Liakos, an attorney convicted of another arson conspiracy who was also disbarred, was granted reinstatement in 1990. *Matter of Liakos*, 6 Mass. Att'y Discipline Rep. 201, 203 (1990).

[8]Rule 4:01, § 18 (5) of the Supreme Judicial Court, as amended, 394 Mass. 1106 (1985), provides in relevant part: "On any petition [for reinstatement] . . . the respondent-attorney . . . shall have the burden of demonstrating that he has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth, and that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest."

"there is no principled way to distinguish" the petitioner's case from *Matter of Allen, supra,* and *Matter of Liakos,* 6 Mass. Att'y Discipline Rep. 201, 203 (1990).[9] The dissenting member, however, found the petitioner's crime and behavior so heinous that he should not be allowed to resume a legal career because he "has irrevocably violated the public trust by conspiring to commit arson, and . . . his behavior was so egregious that he should never be reinstated."

In deciding a case of this kind, considerations of public welfare are dominant. The question is not whether the petitioner has been punished enough. *Matter of Keenan,* 314 Mass. 544, 547 (1943). However no "offense is so grave that a disbarred attorney is automatically precluded from attempting to demonstrate through ample and adequate proofs, drawn from conduct and social interactions, that he has achieved a 'present fitness' (*In re Kone,* 90 Conn. 440, 442 [1916]) to serve as an attorney and has led a sufficiently exemplary life to inspire public confidence once again, in spite of his previous actions." *Matter of Hiss, supra* at 452. Consistent with this view, we have allowed the reinstatement of similarly situated attorneys. See *Matter of Allen, supra; Matter of Latour,* 4 Mass. Att'y Discipline Rep. 63, 67 (1984); *Matter of Liakos, supra; Matter of O'Brien,* 2 Mass. Att'y Discipline Rep. 166, 168 (1981). When assessing a petitioner's moral fitness, five relevant considerations are: (1) the nature of the original offense; (2) the petitioner's age, maturity, and experience at the time of disbarment; (3) the petitioner's conduct and occupation since disbarment; (4) the amount of time that has elapsed since disbarment; and (5) whether the petitioner is currently competent in his legal skills. *Matter of Hiss, supra* at 460.

We turn to the petitioner's evidence. The petitioner's personal history as found by the panel is as follows: The petitioner, who was seventy-five years old at the time of the hearing, graduated from Union College in 1939. He enlisted

---

[9]The panel majority indicated that, but for the case precedents, it would have recommended against reinstatement.

in the armed services and was assigned to military intelligence during World Was II. After his military service, he worked for the Internal Revenue Service for fifteen years. While working, the petitioner graduated from Suffolk University Law School and was admitted to the bar on November 14, 1950. "Thereafter, he practiced law, principally tax law, for approximately [twenty-eight] years. On November 3, 1978, he was temporarily suspended on account of the convictions, and following appellate affirmance of the convictions, on March 18, 1982, [the petitioner] was disbarred." Neither prior to or after the convictions has the petitioner had any other disciplinary history. The petitioner served thirteen months of his sentence.

While the petitioner does not challenge his convictions, he continues to maintain his innocence. Fifteen years have elapsed since the petitioner's suspension and eleven years since his disbarment. During this time, he has abided by the court's decree and not engaged in any activity that would constitute the practice of law. The petitioner has become very successful as an accountant and in real estate development. There is no material dispute regarding the manner in which he has carried on his work and business.

The petitioner amply demonstrated moral qualification, competency, and learning in law. He subscribes to several tax magazines and keeps abreast of recent opinions.

Testimony provided by the petitioner, character witnesses, and letters of recommendation indicate his "many acts of charity; a multitude of charitable contributions; and a true dedication to friends and family, especially his wife, who suffers from a debilitating illness." Among the witnesses who testified at the hearing were a judge of the Essex County Probate and Family Court, a retired assistant chief probation officer for the Dorchester District Court, a professor and associate dean of a well-known law school, the register of deeds for Suffolk County, a former register of deeds for Middlesex County, a retired chief of the Massachusetts Income Tax Bureau, an attorney, and a clergyman. The witnesses uniformly testified as to the petitioner's good character and fitness to

practice law, "predict[ing] that he would be perceived as an attorney in good standing, if reinstated," who would not undermine the competence of the bar or endanger the public interest. More than twenty-three other individuals including judges, attorneys, officials of various courts, probation officers, elected officials, and citizens submitted letters in support of reinstatement.

No witness appeared in opposition to reinstatement, but the Boston Bar Association (BBA) did so by letter.[10] The BBA's position is that the petitioner's convictions are for offenses "of such a heinous nature, including as they did the willingness to risk human lives for illicit personal gain, and are so well remembered by large sections of the public, that reinstating an individual capable of such actions to the privilege of membership in the bar of this Commonwealth and to the position of trust inherent in bar membership, is clearly and seriously detrimental to the integrity and standing of the bar, to the administration of justice, and to the public interest."[11] At the close of evidence, however, bar counsel declared: "[I]f Allen was reinstated and if Liakos was reinstated, and if testimony of the individuals who testified here about the perception of the bar and perception of the public is valid, and I have no way to say that it isn't, then there would be something wrong with the equity if I were to oppose [the petitioner's] reinstatement, and therefore our office will not oppose his reinstatement unless some further information were to come to the attention of this board that I'm completely unaware of at this time."

The petitioner desires reinstatement to the bar "after a full and respected life, a devotion to my family and associates

[10]The board notified the following of the petitioner's petition for reinstatement: the office of the Attorney General; the district attorney for the Suffolk district; the Massachusetts Bar Association; the Bar Association of Norfolk County; the Client Security Board; and Massachusetts Lawyers Weekly.

[11]No act of arson or attempted arson underlies the petitioner's disbarment. He was convicted of conspiracy to commit arson for engaging in a plan to burn a building that was abandoned before any fire would have occurred.

and now having reached an advanced age of seventy-five (75) years, it is my wish to have some confidence placed in me after a full life of rectitude by being again readmitted to the Bar as an attorney before I die." The evidence presented to the panel displayed that, since disbarment, the petitioner has led an exemplary personal and professional life, kept current in the law, particularly in his area of expertise, and passed the professional ethics portion of the Massachusetts bar examination. The petitioner presented evidence consisting of testimony and letters of support that his reinstatement would not impair the integrity of the bar, administration of justice, or the public interest. The witnesses, who have known him personally and professionally, exhibited their ongoing respect for him as a person and future member of the bar. But for his single transgression, the petitioner had an unblemished record as an attorney and member of the community. He has served his sentence and reconstructed his life over the past eleven years. We conclude that the petitioner has met his burden and grant the petition for reinstatement.

Finally we turn to the question whether the petitioner is required to take the full bar examination before he is reinstated. There is no rule or standard established that requires a disbarred attorney to take the bar examination prior to reinstatement. He took and passed the professional ethics portion of the Massachusetts bar examination in 1992. The board found that the petitioner has satisfactorily demonstrated that he has an adequate learning and competency in the law. We agree and rule that it is unnecessary for him retake the Massachusetts bar examination prior to reinstatement. The case is remanded to the Supreme Judicial Court for the county of Suffolk for entry of an order reinstating the petitioner as a member of the bar of the Commonwealth.

*So ordered.*