The PEOPLE of the State of Colorado, Complainant,

v.

Timothy LAQUEY, Attorney–Respondent.

No. 93SA264.

Supreme Court of Colorado,
En Banc.

Nov. 15, 1993.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

James F. Donaldson, Denver, for attorney-respondent.

PER CURIAM.

An inquiry panel of the Supreme Court Grievance Committee accepted the stipulation, agreement, and conditional admission of misconduct entered into between the respondent [1] and the assistant disciplinary counsel. *See* C.R.C.P. 241.18. In the stipulation, the respondent consented to the imposition of either a three-year suspension, or disbarment. Without explanation, the inquiry panel recommended that the respondent be suspended for three years. We accept the stipulation and agreement. Given the seriousness of the respondent's criminal conduct, however, we reject the panel's recommendation, and order that the respondent be disbarred and be assessed the costs of the proceeding.

I

The stipulation and agreement recites facts and circumstances surrounding the respondent's two separate felony convictions. These convictions are the subjects of two formal disciplinary complaints filed against the respondent. The stipulation discloses the following:

---

1. The respondent was admitted to the bar of this court on May 21, 1986, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). The respondent was placed under an immediate suspension from the practice of law, effective October 1, 1991, because he was convicted of a serious crime under C.R.C.P. 241.16(e). *See* C.R.C.P. 241.8.

*GC 91B–58*

a. On September 14, 1990, [an agent] of the South Metro Drug Task Force arranged to sell ten pounds of marijuana to Daniel J. Gamble for $8,500.00. [The agent] arranged to sell the marijuana to Mr. Gamble on September 10, 1990, at the Southglenn Mall, 6911 South University Boulevard, Arapahoe County, Colorado. Mr. Gamble told [the agent] that another individual would contribute money and accompany him on the buy. Respondent was the other individual.

b. On September 16, 1990, [the agent] and additional Drug Task Force Agents took ten pounds of marijuana to the designated location. [The agent] wore a hidden transmitting device monitored by other agents. [The agent] asked Mr. Gamble and respondent if they had the $8,500.00. Respondent told [the agent] the money was on the floor of the front passenger area. Respondent sat in the rear seat while Mr. Gamble sat in the drivers seat. [The agent] retrieved and counted the money which was wrapped in an envelope.

c. [The agent] knew respondent was an attorney at the time of the marijuana sale. While the drug sale took place, [the agent] asked respondent if he would take care of some legal issues for him. Respondent stated, "Yeah, right now this is our first deal. Let's get this out of the way." Respondent further told [the agent] that he was "a damn good lawyer."

d. The following conversation regarding the marijuana purchase took place within Mr. Gamble's automobile during the marijuana/cash exchange:

[The agent]: "I know what we're doing today. We're doing the ten (meaning ten pounds of marijuana). I need another structure here so I know what to do on a monthly basis or bi-weekly or what."

Respondent: "Yeah. I'm hoping I can do twice a month or something like that."

[The agent]: "Twenty a month?"

Respondent: "Yeah. Let me know how this goes … really tell you the next time."

[The agent]: "Okay."

[The agent] and respondent also discussed the fact that only respondent and Mr. Gamble were buying the marijuana.

e. Respondent then checked the marijuana and [the agent] counted the money. Shortly thereafter, the Drug Task Force Agents arrested respondent and Mr. Gamble.

f. The Arapahoe County District Attorney's Office charged respondent with the following felony violations:

i. Knowingly possess with intent to distribute marijuana in violation of § 18–18–106(8)(b)(I) C.R.S.

ii. Conspiracy in violation of § 18–2–201 C.R.S.

iii. Possession of 8 ounces or more of marijuana in violation of § 18–18–106(4)(b)(I).

g. On May 9, 1991, respondent entered into a plea agreement with the Arapahoe County District Attorney's office. Respondent agreed to plead guilty to possession of marijuana greater than eight ounces in violation § 18–18–106(8)(b)(I) C.R.S. [sic]. On August 9, 1991, the Honorable Kenneth K. Stuart accepted respondent's plea of guilty to possession of marijuana greater than eight ounces, § 18–18–106(8)(b)(I) C.R.S. [sic], a felony 5. Possession of marijuana greater than eight ounces is a serious crime as defined by C.R.C.P.Rule 241.-16(e).

*GC 92A–41*

h. On January 13, 1992, respondent entered Arapahoe County Court, Division A, 5606 South Court Place, Littleton, Colorado, in possession of a loaded and functional Smith and Wesson, Model 637, .38 Caliber, five-shot revolver.

i. A courthouse security guard monitoring a magnetometer discovered the firearm, and an Arapahoe County sheriff deputy seized the firearm and took custody of the respondent.

j. Respondent was charged with one count of Possession of a Firearm by a

Convicted Felon, 18 U.S.C. § 922(g)(1). (On May 9, 1991 [sic], Respondent pleaded guilty to possession of marijuana greater than eight ounces in violation of § 18–18–106(8)(b)(I) C.R.S. [sic], a Class Five felony.)

k. On May 14, 1992, Respondent pleaded guilty, in U.S. District Court, to a one-count Indictment of Possession of a Firearm by a Convicted Felon (a felony under federal law). Possession of a Firearm by a convicted felon is a "serious crime" as defined by C.R.C.P.Rule 241.-16(e).

l. Respondent was ordered to reside in CTC halfway house for a period of six months, was placed on probation for a period of three years, and had to pay $50 to the Crime Victim Fund.

As the respondent has admitted, both of his felony convictions are serious crimes under C.R.C.P. 241.16(e), and he has therefore violated C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline).

## II

The inquiry panel accepted the stipulation and recommended that the respondent be suspended for three years. The assistant disciplinary counsel contends that disbarment rather than suspension is appropriate.

 The commission of a serious offense involving even the possession or use of an illegal drug warrants a substantial sanction. *People v. Davis*, 768 P.2d 1227, 1229–30 (Colo.1989). Moreover, at least for the purpose of analyzing the proper sanction in this disciplinary case, there is little doubt that the respondent purchased the marijuana in order to sell or distribute it. The conversation between the agent and the respondent just prior to his arrest demonstrates this, as does the respondent's

attorney's assertion in the Respondent's Analysis of Discipline, that "[the respondent] has admitted past experimentation with controlled substances including marijuana and cocaine. Fortunately, that experimentation never led to habitual use of those drugs."

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (ABA *Standards*), in the absence of mitigating factors, disbarment is warranted when "a lawyer engages in serious criminal conduct a necessary element of which includes ... the sale, distribution or importation of controlled substances; ... or an attempt or conspiracy or solicitation of another to commit any of these offenses...." ABA *Standards* 5.11(a). We have said that

> [d]isbarment is appropriate when an attorney sells, distributes, or imports illegal drugs. *See, e.g., People v. Harfmann*, 638 P.2d 745 (Colo.1981) (attorney disbarred for sale and introduction of illegal drugs in county jail); *People v. Unruh*, 621 P.2d 948 (Colo.1980) (deputy district attorney's use of illegal drugs and narcotics and conspiring to import narcotics into the United States warrants disbarment).

*People v. Abelman*, 804 P.2d 859, 862 n. 2 (Colo.1991). Further, we find that the respondent's felony conviction for possession of a firearm while he was still on probation for the possession of marijuana conviction forecloses any sanction but disbarment. Although the circumstances surrounding the respondent's second felony conviction are unique and might justify a lesser criminal sentence for that offense,[2] the fact remains that the respondent possessed a firearm after being convicted of a felony. While the respondent has not previously been disciplined, the record in this case does not present the compelling factors in mitigation that warrant a sanction less than disbarment. *Cf. People v. Rhodes*, 829 P.2d 850, 851 (Colo.1992); *People v.*

---

2. Although not a part of the stipulation entered into between the parties, the respondent alleges in his Analysis of Discipline that on January 10, 1992, three days before he was detained for carrying a concealed weapon, he was the victim of an armed robbery. He asserts that the circumstances of the robbery placed him in a state of overwhelming "fear and paranoia" and resulted in his possession of a handgun.

*Larsen,* 808 P.2d 1265, 1268 (Colo.1991). Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct, but reject the inquiry panel's recommendation.

## III

It is hereby ordered that Timothy La-Quey be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that LaQuey pay the costs of this proceeding in the amount of $62.57 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.