**Timothy LAQUEY, Petitioner,**

v.

**The PEOPLE of the State of
Colorado, Respondent.**

**No. 06PDJ035.**

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Feb. 29, 2008.

On September 25, 2007, a Hearing Board composed of WILLIAM J. MARTINEZ and DOUGLAS D. PIERSEL, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a Readmission Hearing pursuant to C.R.C.P.

251.29(d) and 251.18. John J. Astuno, Jr. appeared on behalf of Timothy LaQuey ("Petitioner") and James S. Sudler appeared on behalf of the Office of Attorney Regulation Counsel ("the People") in these proceedings. The Hearing Board now issues the following Opinion and Order Re: Readmission Pursuant to C.R.C.P. 251.29.

## AMENDED OPINION AND ORDER RE: READMISSION PURSUANT TO C.R.C.P. 251.29

### I.  ISSUE

An attorney seeking readmission after disbarment must prove, among other matters, fitness to practice law and rehabilitation by clear and convincing evidence under C.R.C.P. 251.29. Petitioner, disbarred over fourteen years ago for engaging in criminal conduct, presented evidence of the substantial changes in his personal life and character. Are these substantial improvements sufficient for Petitioner to meet his burden of proving rehabilitation and fitness to practice law by clear and convincing evidence?

Although the People argue that Petitioner has not met his burden and should not be readmitted, the Hearing Board finds Petitioner is rehabilitated and fit to practice law. *DECISION OF HEARING BOARD:* **AT-TORNEY READMITTED TO THE PRAC-TICE OF LAW.**

### II.  PROCEDURAL HISTORY

On May 31, 2006, over twelve years after the effective date of his disbarment, Petitioner filed a "Verified Petition for Readmission." The People answered the petition and agreed to its technical sufficiency, but took no position regarding readmission pending an investigation.

On September 17, 2007, the People filed their "Trial Brief Re: Readmission" and stated therein that they did not plan on calling any witnesses and would leave it to the Hearing Board to "... determine if the evidence is clear and convincing that the petitioner is rehabilitated and that he is fit to practice law." At the conclusion of the hearing, the People argued that Petitioner had not demonstrated a fundamental change in character, primarily because Petitioner had not entered into a payment plan with the IRS and the Colorado Department of Revenue on taxes he owed before filing his petition. Nevertheless, Petitioner entered into such a plan after the close of evidence at the hearing; the People did not object to the Hearing Board considering such evidence in its findings.

The parties submitted a "Stipulation of Facts," which the Hearing Board incorporates into its findings set forth below.

### III.  FINDINGS OF FACT

The Hearing Board considered the testimony of witnesses and exhibits admitted into evidence, and now finds the following facts by clear and convincing evidence.

Petitioner took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court, Attorney Registration No. 15602, on May 21, 1986. The Colorado Supreme Court disbarred Petitioner on November 15, 1993. The Hearing Board first addresses those matters that led to his disbarment.

#### *Matters Leading to Petitioner's Disbarment*

*First Conviction*

On September 14, 1990, four years after his admission to the Bar in Colorado, Petitioner accompanied a friend who arranged for the purchase of ten pounds of marijuana for $8,500.00 from an undercover agent with the South Metro Drug Task Force who posed as a buyer. On May 9, 1991, Petitioner pled guilty to possession of marijuana greater than eight ounces in violation of C.R.S. § 18–18–106(4)(b)(I) based upon his participation in this undercover purchase.

*Second Conviction*

On January 13, 1992, Petitioner entered the Arapahoe County Courthouse, while in possession of a loaded and functional .38 caliber revolver. On May 14, 1992, Petitioner pled guilty, in United States District Court, to a one-count indictment charging

him with felony possession of a firearm by a convicted felon.

Petitioner's testimony as to why he possessed a gun is undisputed in these proceedings. Petitioner began carrying a gun for self-defense following an incident where he was robbed at gunpoint.[1] Jan Jenkins, a clinical psychologist, treated Petitioner following the incident and found that he suffered "acute psychological trauma" stemming from the assault. One day while working at the Park Avenue Law Firm, Petitioner, in his haste, went to the courthouse to file a pleading with the gun in his briefcase. When Petitioner went through a magnetometer at the courthouse security post, guards immediately detected the weapon and arrested Petitioner without incident.

*Immediate Suspension and Subsequent Disbarment*

Effective October 1, 1991, Petitioner consented to the immediate suspension of his license based on the two convictions discussed above. On or about July 21, 1993, Petitioner and the People entered into a stipulation in which he admitted misconduct and consented to the imposition of a three-year suspension or disbarment. On November 15, 1993, the Colorado Supreme Court accepted Petitioner's stipulation and admission of misconduct and disbarred him from the practice of law. *See People v. LaQuey,* 862 P.2d 278 (Colo.1993).

### Evidence Presented in Support of the Petition for Readmission

*Recent Conduct in Support of the Petition for Readmission*

Over fourteen years have lapsed since Petitioner was disbarred from the practice of

law. While Petitioner could have applied for readmission in 2001, he waited until 2006, because he felt he was not ready to resume the practice law. However, approximately one year ago, Petitioner took the following steps to establish his fitness to once again practice law.

- In July 2005, Petitioner passed the Colorado Bar Examination, and has also successfully passed the Multi–State Professional Responsibility Examination.

- Petitioner has complied with all orders of the court arising out of his disbarment and has complied with all rules and regulation attendant necessary to process his petition.

- Petitioner attends weekly therapy sessions with Dr. Jenkins, a clinical psychologist.

- Petitioner attends daily Alcoholics Anonymous ("AA") meetings.

- Petitioner meets weekly with his AA sponsor in addition to attendance at AA meetings.

- Petitioner attends weekly CBA Colorado Lawyers Helping Lawyers group meetings.

- Petitioner has now paid a substantial amount of the taxes and penalties he owed to the Federal government.[2]

- Petitioner has assisted indigent citizens who live near the Park Avenue Law Firm in obtaining eye care and glasses by personally paying for their services.

- Petitioner, although not affiliated with a formal charitable program, provided assistance to the homeless by providing them money, shelter, and legal assistance through Mr. Sessions.

1. Although Petitioner apparently felt the need to carry a gun for self-protection, he was prohibited from doing so as a result of his conviction for participating in the purchase of ten pounds of marijuana as described herein.

2. Petitioner entered into a payment plan with the IRS and the Colorado Department of Revenue following the hearing and the People agreed to allow him to tender evidence after the conclusion of the hearing. Respondent testified that he could have entered a payment plan in advance of the hearing but would have had to borrow money to do so and thought that would not be proper. Instead, he presented evidence of his estimated tax liability and agreed to pay it as soon as he earned sufficient funds to do so. On or about October 18, 2007, Petitioner paid the IRS $52,211.15, but he still owes $25,000.00 to the federal government. Respondent testified that he did not file income tax returns for several years believing his losses from a towing company were sufficient to exempt him from filing a return. There was no other evidence on this issue presented by either party.

- Petitioner acted as basketball coach for a boy's league and later served on the board of directors for the recreational facility that hosted the program.

- As a paralegal, Petitioner continues to provide excellent legal assistance, including research and writing for Vernon Sessions, a lawyer with fifty years of experience in the practice of law in Denver.

- Petitioner testified to his willingness to continue therapy as a condition of his readmission as well as submit to urine analysis.

*Testimony of Jan Jenkins, Ph.D.*

In 1992 Petitioner sought counseling and psychotherapy for a total of twenty hours with Jan Jenkins Ph.D., a licensed psychologist. Thereafter, Dr. Jenkins testified on Petitioner's behalf during a sentencing hearing following his conviction of possession of a weapon. In 1992, Dr. Jenkins "felt" Petitioner was an alcoholic and recommended ongoing alcoholic treatment. She also recommended intensive psychotherapy for the "acute psychological trauma" after he was robbed at gunpoint.

While providing treatment to Petitioner in 1992, Dr. Jenkins found him to be impulsive, self-destructive, and immature. Furthermore, Dr. Jenkins noted Petitioner was interested in practicing law for the status it brought him and that he had not dealt with his abuse of alcohol. Dr. Jenkins noted during her sessions with him that Petitioner's ego was "inflamed with a heady sense of his seeming power, success, and invincibility as a newly minted attorney." She opined that this immaturity, in part, led to his willing participation in the purchase of the marijuana described above.

After making her initial observations in 1992, Dr. Jenkins did not see or treat Petitioner again until August 2006, shortly before he filed his petition for readmission with the PDJ. For nearly a year, Dr. Jenkins has treated Petitioner in weekly sessions. During this period of time, Dr. Jenkins has noted a difference in Petitioner from the findings she made in 1992.

Dr. Jenkins now opines that Petitioner is a different person. She points to the substantial strides he has made in therapy and his capacity to learn from his mistakes. This process has been "facilitated by guidance and support regarding his personal and professional life." He is highly motivated to become a reputable member of the Bar and appreciates the necessity of upholding the ethical standards required of a lawyer. Dr. Jenkins finds that Petitioner is not a danger to the public and that he can practice law as long as he continues to abstain from alcohol. In the opinion of Dr. Jenkins, Petitioner is rehabilitated, is fit to practice law, and he should be readmitted to the bar.

*Testimony of Bennett Aisenberg, Esq.*

Petitioner met with attorney Bennett Aisenberg twice on or about February 8, 2007, for the purpose of assessing Petitioner's knowledge of the ethical rules in the State of Colorado. Mr. Aisenberg asked Petitioner to review the Colorado Rules of Professional Conduct and then tested him using an ethics exam, which originated from the National Institute of Trial Advocacy. Petitioner scored 35 correct out of 41. Mr. Aisenberg discussed the incorrect answers with Petitioner, some of which Mr. Aisenberg himself questioned whether the "correct" answer was actually correct under Colorado law. Mr. Aisenberg found that Petitioner had a "a very good overall knowledge of the Rules of Professional Conduct."

*Testimony of Rodney Borwick*

Mr. Borwick is a lawyer who has practiced in the Park Avenue Law Building for twenty-five years. He has known Petitioner both as a lawyer and as a paralegal during that time. In Mr. Borwick's opinion, Petitioner has experienced a lot of personal growth and is committed to getting his license back. Mr. Borwick has seen Petitioner grow professionally as a result of Mr. Sessions' mentoring. Mr. Borwick's believes Petitioner is a man of integrity and would trust him with court appearances on his behalf.

### Testimony of Evelyn Sessions

Mrs. Sessions is the wife of Vernon Sessions. She has managed the Park Avenue Law Firm since its inception approximately fifty years ago. In that capacity, she has worked with Petitioner for more than twenty years. She views Petitioner as trustworthy and conscientious and an asset to the community. She thinks of Petitioner as a son.

### Testimony of Robert Driscoll

Mr. Driscoll is a lawyer who was suspended from 1992–2003 for substance abuse. In September 2003, he was reinstated after demonstrating by clear and convincing evidence his abstinence, rehabilitation, and fitness to practice law. Mr. Driscoll first met Petitioner at the CBA's Colorado Lawyers Helping Lawyers meetings and is now Petitioner's AA mentor. Mr. Driscoll meets with Petitioner three times a week and one of these meetings is face-to-face. Mr. Driscoll believes Petitioner would be a "tremendous" asset to the legal community and has no questions about Petitioner's fitness to practice law as long as he remains sober. Mr. Driscoll also testified that in his view Petitioner had been rehabilitated and that his commitment to sobriety is very strong. In this regard, Mr. Driscoll would recommend that Petitioner continue meeting with AA weekly, submit to urine analysis, and continued psychotherapy.

### Testimony of Vernon Sessions

Mr. Sessions has practiced in Denver for approximately fifty years at the same location, the Park Avenue Law Firm. Mr. Sessions has known Petitioner since he graduated from law school and was employed as a lawyer and paralegal at the Park Avenue Law Firm. Petitioner has worked directly with Mr. Sessions since 1997. While working with Mr. Sessions, Petitioner has sought guidance and mentoring and credits Mr. Sessions with providing him with the structure and direction that he lacked in his early career.

Mr. Sessions corroborates Petitioner's testimony that he is no longer associating with people who negatively influenced his behavior in the past. Mr. Sessions testified that Petitioner is hard working, reliable, trustworthy, bright, organized, and excellent with clients. Mr. Sessions also testified that even as a paralegal, Petitioner makes him look good with quality legal research and writing. Mr. Sessions is so confident in Petitioner's fitness to practice law and rehabilitation that he intends to make Petitioner a partner in his law practice and one day turn it over to him.

### Testimony of Raymond McCleery

Dr. McCleery is an optometrist who owns Peepers Optical. He has known Petitioner for approximately eighteen years and commends him for the financial assistance Petitioner has provided the poor who need eye glasses, approximately one per year for the past several years. Dr. McCleery supports Petitioner's application for readmission and if Petitioner were readmitted, Dr. McCleery would hire him.

### Testimony of Petitioner

Petitioner grew up in Wray, Colorado and graduated from high school in 1976. He later attended the University of Denver and received a degree in political science in 1983. In 1985, Petitioner graduated from the University of Denver College of Law and received a degree in international relations and law. Ray Miller hired Petitioner immediately after Petitioner passed the Colorado Bar Examination. According to the undisputed evidence, Mr. Miller was not a good mentor for Petitioner. Petitioner described him as a real estate lawyer and a "wheeler-dealer."

Following his disbarment in 1993, Petitioner described a period of total wandering. Although he continued to work as a law clerk for Mr. Sessions following Mr. Miller's death in 1993, Petitioner initially failed to make any significant changes in his life. He continued to drink sporadically and associate with people who also drank and were generally not good role models. Approximately one year ago, Petitioner finally began in earnest to change his group of associates and deal with his drinking problem, albeit in a manner other than that recommended by Dr. Jenkins or Dr. Packard.

Petitioner now recognizes that he fettered away his privilege to practice law because of his immaturity and a false sense of grandiosity. He now views Mr. Sessions as a role model and intends, if readmitted, to practice law with Mr. Sessions. As outlined above, Petitioner testified to the steps he has taken within the last year toward rehabilitation.

*Testimony of Nancy Miller*

Mrs. Miller is the wife of Ray Miller, the first lawyer Petitioner worked for at the Park Avenue Law Building. Mrs. Miller viewed Petitioner as a young lawyer caught in her deceased husband's lifestyle, which included big spending and clients she described as "seedy." She believes her husband was a poor role model for Petitioner who tried to emulate his practice. She has seen a remarkable change in Petitioner since those early days of his legal career and would trust him to represent her if he was readmitted to the practice of law.

*Report from Michele Packard, Ph.D.*

Dr. Packard's report raises questions about Petitioner's consumption of alcohol; Petitioner has admitted to the doctor that he has experienced blackouts after drinking to excess in the past. Dr. Packard stated in her report that blackouts are a sign of a serious drinking problem even if the drinking is sporadic and followed by periods of abstinence. Dr. Packard recommended that Petitioner attend an outpatient treatment at Arapahoe House.

### IV. *LEGAL ANALYSIS*

C.R.C.P. 251.29. provides in relevant part:
(a) Readmission After Disbarment.
A disbarred attorney may not apply for readmission until at least eight years after the effective date of the order of disbarment. To be eligible for readmission the attorney must demonstrate the attorney's fitness to practice law and professional competence, and must successfully complete the written examination for admis-

sion to the Bar. The attorney must file a petition for readmission, properly verified, with the Presiding Disciplinary Judge, and furnish a copy to the Regulation Counsel. Thereafter, the petition shall be heard in procedures identical to those outlined by these rules governing hearings of complaints, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compliance with all applicable disciplinary orders and with all provisions of this Chapter. A Hearing Board shall consider every petition for readmission and shall enter an order granting or denying readmission.

■ *People v. Klein,* 756 P.2d 1013, 1016 (Colo.1988) interprets the language of the prior rule governing readmission to the bar, C.R.C.P. 241.22, and sets forth criteria which must be considered in readmission proceedings in order to evaluate an attorney's rehabilitation. *Klein* requires:

Any determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the Petitioner's state of mind and ability, such as:
- Character;
- Conduct since the imposition of the original discipline;
- Professional competence, candor and sincerity;
- Recommendations of other witnesses;
- Present business pursuits of the Petitioner;
- The personal and community service aspects of the Petitioner's life; and
- The Petitioner's recognition of the seriousness of his previous misconduct.

■ Rehabilitation for purposes of attorney reinstatement and readmission to the bar has been defined as "the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society." *Goff v. People,* 35 P.3d 487, 494–95 (Colo.O.P.D.J.2000),[3] *citing* Avrom Robin, *Character and Fitness Requirements for Bar Admission in New York,* 13 Touro L.Rev. 569, 583 (1997) (*quoting In re Cason,* 249 Ga.

---

**3.** "The rationale of the Hearing Board in a particular case can neither serve as *stare decisis* precedent for future cases nor constitute the law

of the jurisdiction." *In re Roose,* 69 P.3d 43, 48 (Colo.2003)

806, 294 S.E.2d 520, 522–23 (1982)). Other factors to consider are the applicant's age at the time of the offense and the likelihood that the applicant will repeat the behavior in the future. *Id.* Courts, including those in Colorado, focus upon the applicant's current mental state. *Id.; See Klein,* 756 P.2d at 1016.

■ Imposition of discipline against an attorney includes a determination that some professional or personal shortcoming existed upon which the discipline is premised. *Goff,* 35 P.3d at 495–96; *Avila v. People,* 52 P.3d 230, 234 (Colo.O.P.D.J.2002). The shortcoming may have resulted either from personal deficits or from a combination of personal deficits and professional and/or environmental inadequacies. *Id.* It necessarily follows that the analysis of rehabilitation should be directed at the professional or moral shortcoming, which resulted in the discipline imposed. *Id.*

■ Readmission, however, will not be granted automatically because the applicant has not engaged in further misconduct following disbarment. *See In re Sharpe,* 499 P.2d 406, 409 (Okla.1972). The foremost concern must be protecting the public welfare. Each case for readmission must be reviewed on its own merits, and will fail or succeed on the evidence presented and the circumstances peculiar to that case. *Goff,* 35 P.3d at 495, *citing In re Cantrell,* 785 P.2d 312, 313 (Okla.1989). The Hearing Board must determine that rehabilitation has already occurred, not that it may occur in the future. While an order granting readmission may include conditions, which must be followed by the readmitted attorney, it is a prerequisite to any such order that the attorney has already been successfully rehabilitated. *See* C.R.C.P. 251.29(b). Proof of anticipated changes will not satisfy this requirement. *See Goff,* 35 P.3d at 495.

■ Nevertheless, the readmission process itself recognizes that no offense "is so grave that a disbarred attorney is automatically precluded from attempting to demonstrate through ample and adequate proofs, drawn from conduct and social interactions, that he has achieved a 'present fitness,' to serve as an attorney and has led a sufficiently exemplary life to inspire public confident [sic] once again, in spite of his previous actions." *Avila,* 52 P.3d at 235, citing *In re Kone,* 90 Conn. 440, 442, 97 A. 307 (1916) and *In the Matter of Allen,* 400 Mass. 417, 509 N.E.2d 1158, 1160–61 (1987). "Rehabilitation . . . is a 'state of mind' and the law looks with favor upon rewarding with the opportunity to serve, one who has achieved 'reformation and regeneration.' " *Id., citing March v. Committee of Bar Examiners,* 67 Cal.2d 718, 732, 433 P.2d 191, 63 Cal.Rptr. 399 (1967).

■ Petitioner offered his own testimony and the testimony of others regarding his remorse over his prior actions, his efforts to face his ethical and personal issues, and his efforts to stay connected with the legal profession in ways other than practicing law.

Even though Petitioner did not enroll at Arapahoe House as Dr. Packard recommended, Petitioner sought counseling through Dr. Jenkins, effectively dealt with his drinking problem, and made significant changes in his life that show he has matured and is not likely to repeat the conduct that brought him to this court in the first place. In addition, Petitioner found a mentor willing to provide structure to his practice upon readmission. By all accounts, Petitioner is bright and he is capable of handling legal matters from an intellectual standpoint.

Although Petitioner's conduct in committing criminal offenses was very serious, the Hearing Board finds that he is genuinely remorseful and recognizes the seriousness of his past conduct. The Hearing Board would have preferred that Petitioner resolve all of his tax issues before applying for readmission, but he has now addressed these issues as discussed above. Furthermore, given the rehabilitation and maturity he has demonstrated, Petitioner is not likely to repeat the conduct that led to his disbarment.

While the Hearing Board finds that Petitioner has met his burden in these proceedings, it also recognizes that Petitioner needs to continue his efforts to avoid his past problems including his financial difficulties, poor relationship choices, and episodic drinking. With this in mind, the Hearing Board agrees with Petitioner that certain conditions are

appropriate given the need to solidify the substantial rehabilitation he has demonstrated.

### V. *ORDER*

1. The Hearing Board **GRANTS** the "Verified Petition for Readmission" over the People's objection. Petitioner **SHALL** contact the Office of Attorney Registration within twenty (20) days of the date of this order and comply with all necessary conditions of readmission required of a "newly admitted attorney" which include the payment of registration fees, completion of requisite paperwork, obtaining a new attorney registration number, and appearing before the Presiding Disciplinary Judge to take the oath of admission. The Court will issue an "Order and Notice of Readmission Pursuant to C.R.C.P. 251.29(a)" upon Petitioner's successful compliance with the above conditions.

2. As a condition of his readmission, Petitioner shall submit to monitoring by a practice monitor other than Mr. Sessions once a month for a period of one year. The parties shall agree to the monitor and if they cannot agree, the Court will select one. All standard monitoring conditions the People deem necessary and proper shall apply. Petitioner shall continue weekly sessions with Dr. Jenkins, the CBA Lawyers Helping Lawyers Program, and Mr. Driscoll. Further, Petitioner shall submit once a month to random urine analysis for alcohol and non-prescription drugs for a period of one year. Petitioner shall abstain from the consumption of any non-prescription drugs or alcohol for a period of one year. Petitioner shall also provide Dr. Jenkins with a waiver giving her authority to make bi-annual reports

to the Office of Attorney Regulation Counsel for a period of one year.[4] If Petitioner violates any of these conditions, the People shall notify the Court and may file any pleading they deem appropriate including a new filing based upon an alleged violation of Colo. RPC 3.4(c).

3. Petitioner **SHALL** pay the costs of these proceedings. The People **SHALL** submit a Statement of Costs within fifteen (15) days of the date of this order. Petitioner shall have ten (10) days thereafter to submit a response thereto.

---

4. The People argue in their "Motion for Amendment of Opinion and Order Re: Readmission" that there is no explicit authority for the imposition of conditions set forth above. The Hearing Board notes that under C.R.C.P. 251.29(a), all readmission hearings after disbarment "shall be heard in procedures identical to those outlined by these rules governing hearings of complaint, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compliance with all applicable disciplinary orders and with all provisions of this Chapter." As provided in C.R.C.P. 251.19(b) the rules for hearing board decisions on complaints brought by the People allow a hearing board to enter "other appropriate orders including without limitation, probation, and orders requiring the respondent to pay the costs of the disciplinary proceeding, to make restitution, or to refund money paid to the respondent."