## In the Matter of Nicholas J. Ellis.

Suffolk. May 4, 2010. - July 29, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Attorney at Law,* Disbarment, Reinstatement.

This court reinstated the petitioner to the practice of law, with certain agreed-upon conditions, following his disbarment arising from his plea of guilty to two indictments charging motor vehicle insurance fraud (a misdemeanor), where the record before the Board of Bar Overseers demonstrated that the petitioner possessed the current moral qualifications and learning to practice law, and that his admission to the bar would not be detrimental to the public interest. [414-418]

Petition filed in the Supreme Judicial Court for the county of Suffolk on April 4, 1997.

A petition for reinstatement to the bar, filed on May 6, 2008, was reported by *Cordy,* J.

*Nancy E. Kaufman,* Assistant Bar Counsel.

*J.W. Carney, Jr.,* for the petitioner.

Cordy, J. The matter before us is a reinstatement petition filed by Nicholas J. Ellis. The petitioner was disbarred by this court on November 16, 2000, retroactive to July 21, 1997, the date of his temporary suspension from the practice of law.[1] The temporary suspension and ultimate disbarment arose from a criminal investigation into the conduct of the law firm that bore his name as one of its partners, Ellis & Ellis, and his indictment and subsequent guilty plea to two indictments charging him with motor vehicle insurance fraud, a misdemeanor. A number of other attorneys and employees who worked at the firm, some of its clients, a chiropractor, and a physician also were indicted during the course of the investigation that exposed a pattern of insurance fraud in the firm's highly publicized personal injury law practice. See generally *Matter of Ellis,* 425 Mass. 332 (1997) (affirming orders of temporary suspension on indictment).

As a result of his guilty pleas on September 22, 2000, the

---

[1]The disbarment followed his resignation from the bar.

petitioner was sentenced to six months in a house of correction and five years' probation.[2] One of the conditions of his probation was that he not apply to be reinstated to the practice of law during the period of probation. He was released from incarceration after three months and performed forty hours of community service each week for the balance of the six months. In 2008, three years after completing his probationary term, the reinstatement petition before us was filed, and the Board of Bar Overseers (board) commenced reinstatement proceedings. Bar counsel opposed reinstatement.

After reviewing the petitioner's reinstatement questionnaire and holding a two-day evidentiary hearing that included the petitioner's testimony as well as the introduction of other evidence in support of and in opposition to the petitioner's reinstatement, the hearing panel voted unanimously to recommend reinstatement. The board, over bar counsel's continued objection, adopted the hearing panel's report and, with one dissenting vote, recommended that this court reinstate the petitioner to the practice of law subject to certain conditions (also proposed by the hearing panel). An information to that effect was filed in the county court, and the matter was reserved and reported to the full court by a single justice. We adopt the recommendation of the board.

*Discussion.* A fundamental precept of our system is that persons can be rehabilitated. *Matter of Allen,* 400 Mass. 417, 425 (1987). A prior conviction, even of a serious crime, is not an absolute bar to admission or reinstatement and does not preclude a showing of present moral fitness. *Matter of Prager,* 422 Mass. 86, 91-93 (1996) (that "redemption is possible and valuable is both well established in law and premised upon long-standing, even ancient traditions"). The test is whether at the present time, in spite of his previous misconduct, the petitioner has rehabilitated himself sufficiently to inspire public confidence, that is, whether he currently possesses the necessary moral character and legal acumen to be admitted to the bar of the Commonwealth. *Id.* at 92. Consideration of the public welfare, not his private interest, dominates in considering the reinstatement of a disbarred applicant. *Matter of Keenan,* 314 Mass. 544, 547 (1943).

---

[2]The hearing panel found that the sentencing judge had earlier rejected the prosecution's recommendation of straight probation.

The conduct giving rise to the petitioner's disbarment is affirmative proof that he lacked at the time the moral qualifications to practice law, *Matter of Centracchio*, 345 Mass. 342, 346 (1963), and he bears the heavy burden of establishing that he presently meets those moral and competency qualifications. See *Matter of Prager, supra* at 92. In judging whether he is fit to serve as an attorney, the court looks to (1) the nature of the original offense for which the petitioner was disbarred; (2) the petitioner's character, maturity, and experience at the time he was disbarred; (3) the petitioner's occupation and conduct in the time since his disbarment; (4) the time elapsed since the disbarment; and (5) the petitioner's present competence in legal skills. *Matter of Daniels*, 442 Mass. 1037, 1038 (2004), quoting *Matter of Prager, supra*. This test allows the court to weigh the circumstances concerning the petitioner's misconduct against his subsequent actions that show rehabilitation. See *Matter of Prager, supra* at 95. No one factor is considered dispositive. See *Matter of Allen, supra* at 421-422.

In the reinstatement proceedings before the board, the hearing panel paid particular attention to the standards and factors that bear on readmission articulated above. Its findings and recommendations, as adopted by the board, are entitled to deference, although they are not binding on this court. *Id.* at 421.

The hearing panel began by focusing on the petitioner's misconduct that, as reflected in the indictments to which he pleaded guilty, occurred in 1990 and 1992 when he forwarded information he knew to be false to insurers in order to win settlements for two of his personal injury clients. The hearing panel also assessed the environment in which this conduct occurred. While the law firm eventually bore his name, the petitioner was new to the practice of law when he joined the firm in 1986. The firm was established by his father and tightly controlled by his more experienced older brother, James Ellis, Jr., both of whom were also indicted for fraud and conspiracy.[3,4] As the prosecutor

---

[3]The indictments against the petitioner's father were later nol prossed as part of a series of plea bargains and agreements involving the father, the petitioner, the petitioner's brother, and his sister who worked as the office manager at Ellis & Ellis and had been indicted for operating a usurious loan business making loans to the firm's clients.

[4]The petitioner's brother, James Ellis, Jr., was subsequently sentenced to a State prison term for his conduct.

made clear to the judge at the petitioner's plea and sentencing, the petitioner's conduct paled in comparison to that of his brother, and he was a considerably less significant actor in the crimes committed at the Ellis law firm, playing a supporting role in the frauds that the firm's clients and James Ellis, Jr., perpetrated on insurers.[5]

Balanced against the conduct to which he pleaded guilty, the hearing panel considered the petitioner's postdisbarment activities that included the parenting of his children at home while his wife worked, his efforts to become a teacher,[6] his coaching endeavors on four of his town's youth teams, and his many charitable activities through his church and other organizations. Based on the evidence it received, the hearing panel found that the petitioner had reformed himself. See *Matter of Waitz*, 416 Mass. 298, 305 (1993). He acknowledged his misconduct and the dishonor it had brought to the profession, himself, and his family, and was credible in his expressed remorse and insights into what would be necessary to restore himself to an honorable practice. Most particularly, he understood that he could not again practice with family members or within their sphere of influence. In sum, the hearing panel found that the petitioner had established that he presently was of "good moral character, committed to serving his family and community."[7]

The hearing panel also found that the petitioner had demon-

[5]When the petitioner joined the firm in 1986, it had approximately five attorneys and ten employees. By the mid-1990's, under his brother's management, it had grown to twenty to twenty-five attorneys, up to 150 office support staff, and up to fifty satellite offices, and had approximately 7,000 clients.

[6]The petitioner passed the Department of Education qualifying test and received a teaching certificate, but because of his convictions was unable to obtain employment.

[7]Bar counsel takes particular issue with the efforts by the petitioner, after his disbarment, to collect costs and fees from clients of the Ellis & Ellis firm that were owed and unpaid at the time of the firm's dissolution in 1997, contending, among other things, that some of this may have been the unauthorized practice of law. The hearing panel fully considered this allegation and rejected it, finding that the petitioner had the right to represent himself pro se to collect monies properly owed to him; that he had consulted very experienced counsel with regard to these proposed activities, who properly advised him how to proceed; and that his counsel had specifically informed bar counsel (in advance) of the advice given to the petitioner and the petitioner's proposed collection efforts. To the extent that there was any variance from counsel's advice by the petitioner, the hearing panel found it to be inadvertent and

strated the competency and learning required for admission to practice law. In addition to taking and passing the multistate professional responsibility examination, the petitioner had taken a number of Massachusetts continuing legal education courses and had undertaken to keep current in his legal reading sufficient to assist him in transitioning into the practice of law in specialty areas different from those in which he practiced at Ellis & Ellis. More particularly, the petitioner, on reinstatement, intends to focus his practice on immigration law, Social Security disability law, District Court criminal defense, and debt collection, areas of practice in which he has arranged for mentors to assist him. The petitioner has also secured two experienced attorneys with whom he is acquainted to act as his ethical advisers.

Perhaps the most challenging hurdle for the petitioner to overcome is the effect and perception of his reinstatement on the public and the bar. *Matter of Daniels*, 442 Mass. 1037, 1038 (2004), and cases cited. In this regard, the hearing panel took note not only of his postdisbarment conduct and testimony, but also of a number of letters sent from neighbors, work supervisors, and an attorney regarding the petitioner's current, rehabilitated reputation in the community. In addition, in recommending reinstatement, the hearing panel suggested certain conditions, none of which has been objected to by the petitioner, and all of which were adopted by the board. These conditions are directed toward assuring the public that the petitioner is prepared and capable of reentering the practice of law and steering clear of the problems of his past. Specifically, the panel recommended the following conditions:

> "(1) prior to reinstatement, the petitioner shall take a course recommended by bar counsel concerning the proper method of handling an [Interest on Lawyers Trust Account (IOLTA)] account; (2) the petitioner shall sign an agreement with bar counsel to have his IOLTA account audited for a period of two years at his cost, and shall use for his law practice accounting and auditing an accountant other than Mr. Kyriakis (or any member of his firm), who has

insignificant. We accept the panel's findings in this regard, and note that bar counsel previously brought an unsuccessful contempt action against James N. Ellis, Jr., for similar conduct based on the same advice of counsel.

been and continues to be his father's accountant; (3) for a period of five years, the petitioner shall not engage in practice with any family member or former member of the Ellis & Ellis firm, or the James N. Ellis, Sr. & Associates firm, nor shall he employ in his law practice any employee of his father's firm or his sister's office employees; (4) the petitioner shall not engage in any personal injury or workers' compensation cases, and shall not represent any family members for a period of five years; (5) the petitioner shall purchase and maintain malpractice insurance in a minimum of $1,000,000 per claimant with a deductible not to exceed $10,000 for a period of five years; and (6) within the next two years, the petitioner shall take forty hours of [continuing legal education] courses in the areas of the law in which he intends to practice."[8]

We agree with these conditions. They convey in part the message that the petitioner's reinstatement is decidedly not a reopening of the disgraced law practice of Ellis & Ellis. They also confirm the seriousness with which the board and this court take their obligation to assure the protection of the public interest above all else.

Having demonstrated to the board that he possesses the current moral qualifications and learning to practice law, and that his admission to the bar would not be detrimental to the public interest, the petitioner is reinstated with the aforementioned conditions.

*So ordered.*

---

[8]Before the hearing panel, the petitioner proposed and agreed to the conditions that he not engage in the practice of law with any family members, and that his practice not include personal injury or workers' compensation cases.