NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12025

IN THE MATTER OF VALERIANO DIVIACCHI.


November 2, 2016.


Attorney at Law, Disciplinary proceeding, Suspension, Contingent fee agreement, Attorney-client relationship.  Supreme Judicial Court, Superintendence of inferior courts.  Administrative Law, Substantial evidence.  Board of Bar Overseers.


The respondent, Valeriano Diviacchi, appeals from an order of a single justice of this court suspending him from the practice of law for twenty-seven months, as recommended by the Board of Bar Overseers (board).  We affirm.

1.  Procedural background.  Bar counsel filed a petition for discipline with the board, alleging that Diviacchi committed the following violations of the Massachusetts Rules of Professional Conduct:

(a) failure to explain to the client contingent fee agreement provisions not contained in Forms A or B of Mass. R. Prof. C. 1.5 (f), as appearing in 459 Mass. 1301 (2011), and to obtain the client's informed consent to these provisions, in violation of Mass. R. Prof. C. 1.5 (f);

(b) limitation of representation of the client, failure to seek the client's lawful objectives, and failure to represent the client competently and diligently, in violation of Mass. R. Prof. C. 1.1, 426 Mass. 1308 (1998); Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998); and Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998);

(c) false statements of material fact to the United States District Court and the Boston Municipal Court, in violation of Mass. R. Prof. C. 3.3 (a) (1), 426 Mass. 1383 (1998); and Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998); and

(d) attempting to charge and collect a clearly excessive fee, in violation of Mass. R. Prof. C. 1.5 (a), as appearing in 459 Mass. 1301 (2011).[1]

Diviacchi denied any violation of the disciplinary rules. After an evidentiary hearing, a hearing committee found all the violations charged by bar counsel, found no mitigating factors and several aggravating factors, and recommended that Diviacchi be suspended from the practice of law for fifteen months. The respondent appealed to the board, which adopted the hearing committee's findings and made some additional findings. The board filed an information in the county court recommending that Diviacchi be suspended for twenty-seven months. After a hearing, the single justice adopted the board's recommendation and entered an order of term suspension.

2. Factual background. The single justice summarized the following relevant findings made by the hearing committee and the board, which we supplement with certain additional findings of the hearing committee. On the recommendation of a mutual acquaintance, a client contacted Diviacchi seeking representation in a Federal action filed against her by a lender. The lender alleged that the client had defaulted on a construction loan and on a line of credit and owed approximately $2.8 million. The client asserted a counterclaim against the lender. Although the client had retained other counsel to represent her in this action, rising legal fees motivated her to seek new representation on a contingent fee basis.

The client consulted with Diviacchi, who agreed to represent her on a contingent fee basis with an upfront payment

---

[1] Subsequent to the filing of bar counsel's petition, the Massachusetts Rules of Professional Conduct were amended. Those amendments did not significantly change the rules at issue in this matter. See Mass R. Prof C. 1.1, as appearing in 471 Mass. 1311 (2015); Mass. R. Prof. C. 1.2 (a), as appearing in 471 Mass. 131 (2015); Mass. R. Prof. C. 1.3, as appearing in 471 Mass. 1318 (2015); Mass. R. Prof. C. 1.5 (a), (f), as amended, 471 Mass. 1304 (2015); Mass. R. Prof. C. 3.3 (a) (1), as appearing in 471 Mass. 1416 (2015); and Mass. R. Prof. C. 8.4 (c), as appearing in 471 Mass. 1483 (2015).

in the amount of $25,000.  Because the client could not pay that amount in a lump sum, Diviacchi agreed to accept $15,000 up front.  Diviacchi presented the client with a contingent fee agreement providing that "[t]he claim, controversy, and other matters with reference to which the services are to be performed are SOVEREIGN BANK v. [CLIENT] & COUNTERCLAIM."  It further provided that "[t]he contingency upon which compensation is to be paid is:  recovery by judgment or settlement or otherwise."

Modifying the language provided in the forms appearing in Mass. R. Prof. C. 1.5 (f), the contingent-fee agreement stated the following: "Client is responsible for any amount owed to prior or other counsel not associated with the undersigned. CLIENT IS TO RECEIVE A CREDIT FOR A NON-REFUNDABLE FLAT RATE PAYMENT OF $15,000 PAID NOW AND $10,000 STILL DUE."  Diviacchi made additional modifications to the contingent fee agreement which, according to the board, "favor[ed] [Diviacchi] in any attempt to collect fees and expenses from the client if the relationship [was] terminated or if the client obtain[ed] a non-monetary compensation or no money."  The client "looked the agreement over quickly; [Diviacchi] did not review the agreement with her paragraph by paragraph; he did not explain to the client the provisions and wording he had added; and he did not obtain her informed consent in writing to the modifications he had made."

Diviacchi entered his appearance in the Federal litigation on May 8, 2012 and filed an amended counterclaim and an emergency motion for a thirty-day stay in view of his plans to be out of State for approximately two weeks.  The board found the amended counterclaim to be "only marginally different from the one filed by the client's prior counsel."  The amended counterclaim asserted claims under G. L. c. 93A, §  9, and State common law, and it included, among other things, a request for an injunction preventing the lender from foreclosing on the client's property.  Nonetheless, although the client requested, on multiple occasions, that Diviacchi try to stop the scheduled foreclosure of her property because she wanted to end the matter with a short sale, Diviacchi refused to do so.  Consequently, the client hired another attorney, Harold Jacobi, who filed a limited appearance to enjoin the foreclosure.  The court denied the client's emergency motion for injunctive relief, and, with Jacobi representing her as her principal counsel on that matter, the client appealed to the United States Court of Appeals for the First Circuit.

On May 23, 2012, the client contacted Diviacchi with an inquiry about filing for bankruptcy.  In response, Diviacchi strongly advised the client against this, indicating that such action would not be beneficial.  He specifically told the client to "[t]alk to whatever idiot attorney told [her] to file for bankruptcy."  Nevertheless, the client filed for bankruptcy, which stayed the impending foreclosure for approximately two months.

Meanwhile, on May 29, 2012, the First Circuit notified counsel of record, including Diviacchi, of a "Mandatory Pre-Argument Settlement Conference" scheduled for July 12, 2012.  Diviacchi informed Jacobi that he expected him to "handle the First Circuit matters."  Diviacchi did not attend the July 12 mediation and did not provide any input to Jacobi.

In June, 2012, Diviacchi filed an opposition to the lender's motion to dismiss the counterclaim.  The board found that "[t]hereafter, [Diviacchi] did no work of substance on the client's case and filed nothing further on her behalf in [F]ederal court."

After refusing to meet with the client between May 29 and July 12,[2] Diviacchi sent an electronic mail (e-mail) message to her asking that she make "'the remaining flat rate payment' by the end of July" and threatening to file an attorney's lien if she did not do so.  The client wrote in response:  "I was not aware there was a deadline on that payment, especially since I thought it was related to costs."  Diviacchi then informed the client, for the first time, that this payment "ha[d] been past due for months."  The client begged Diviacchi not to file for the lien as she awaited a sale and settlement.  She also indicated that she needed to discuss with him what had happened at the mediation.  Nonetheless, Diviacchi filed a notice of lien on July 17, 2012, and agreed to meet with the client the next day.  At this meeting, the client revealed "disturbing" information from the mediation, the nature of which the record does not disclose.  In response, Diviacchi ordered the client to leave his office and threatened to telephone the police if she did not do so immediately.  At the hearing before the hearing committee, Diviacchi testified that he considered her a trespasser at that point and acknowledged that he did in fact call the police.  The committee found that Diviacchi's actions

_____

[2] Diviacchi wrote to the client, "I was not hired to stop any [foreclosure] sale, my job is to handle the lender liability case."

on this occasion effectively ended the attorney-client relationship.

With Jacobi now acting as the sole counsel for the client in the underlying Federal court action, the client and the lender reached a settlement. The settlement agreement, finalized on July 20, 2012, specified the following terms:

"The client would sell the property to a buyer who had offered $2.24 million, and the lender would accept $1.9 million in total satisfaction of its claims against her. The property was to be sold on or before September 5, 2012, and the litigation was to be stayed through that date. The client would pay off the junior lienholders. The lender's suit and the client's counterclaim would both be dismissed with prejudice. The lender and the client would exchange mutual releases, as a result of which the lender would pay no money to the client."

The client received no net funds from the lender, but only from the third-party buyer. The hearing committee found that the client's contingent fee agreement with Diviacchi did not anticipate or cover this contingency.

Jacobi represented the client again at the September 5, 2012, closing. The following day, he signed a stipulation of dismissal of the Federal litigation on the client's behalf. The same day, he and the client informed Diviacchi that the matter was resolved and that, following the payment of the junior lienholders and other necessary payments, "the client had received no net funds." Diviacchi "accused Jacobi of ignoring his lien and threatened to do discovery on it and seek a jury trial." On September 14, 2012, the client filed a grievance with the board. She referenced Diviacchi's threats and challenged his claim that she owed $10,000. She also inquired whether the board had a fee dispute group that could assist in handling the matter. Diviacchi was notified of the grievance.

Before responding to the grievance, Diviacchi filed State and Federal actions against the client. Around September 17, 2012, he filed a complaint against the client in the Boston Municipal Court (BMC), seeking to recover $10,000 under the contingent fee agreement and quantum meruit for sixty hours that he claimed to have spent on the client's Federal court matter. Diviacchi stated in a verified complaint, signed under oath, that the client "specifically told [Diviacchi] that she agreed to the flat rate payment of $25,000 and would bring such payment

to the meeting.  That was the first lie told by [the client] to [Diviacchi]; she did not bring the full agreed upon flat rate amount but only $15,000 of such amount"; and violated the fee agreement by settling the Federal case without "notice and completely behind [Diviacchi's] back."

The hearing committee found these allegations to be knowingly false.  It also found them to be material to Diviacchi's requests for relief in that they portrayed the client as a liar in a case where her credibility would be at issue.  As to the allegation that the client settled the case "behind [Diviacchi's] back," the hearing committee pointed out that Diviacchi knew about the mediation and expressly refused to attend and that both the client and Jacobi continued to inform him about the settlement negotiations.

Diviacchi also filed an ex parte motion for real estate attachment for $10,000, the amount he claimed to be due on the agreed sum for costs.  The motion repeated the same allegations regarding the client's breach of the fee agreement.

Around September 23, 2012, Diviacchi filed an "Attorney's Motion to Enforce Attorney's Lien Against all Parties" in Federal court.  He sought $96,483.33 in attorney's fees from the client, arguing that since the bank had accepted $1.9 million from her in lieu of the $2.24 million sales price of her home, she had "received" $340,000 and, based on the contingency fee agreement, he was entitled to one-third of that amount minus her upfront $15,000 payment, plus costs.[3]  He reiterated the two allegations made in his BMC complaint.  Around September 24,

---

[3] The hearing committee noted an error in Diviacchi's calculations, stating that "thirty-three percent of [$340,000] is $112,200" and that this amount less the $15,000 already paid by the client is $97,200.  Diviacchi claims that this itself is a mathematical error and accuses the board and the single justice of inattention to detail in accepting the hearing committee's calculation.  The hearing committee's arithmetic is correct, but it is based on a contingent fee amount of "thirty-three percent" rather than one-third.  One-third of $340,000, rounded to the nearest penny, is $113,333.33; that amount less $15,000 is $98,333.33.  It remains unclear how Diviacchi arrived at the figure he claimed.  In any event, in the circumstances of this case, these slight differences in the calculation of the claimed fee are not material to the question whether it is excessive.

2012, Diviacchi filed an amended complaint in the BMC, repeating all the claims made above.

On April 2, 2013, Diviacchi filed a "Conditional Motion to Further Amend the Complaint and to Join Additional Defendants" in the BMC. He supplemented previous allegations with the following:

> "Discovery has further revealed that such deceit by the [client] is her standard habit and business routine for dealing with attorneys. In the past ten years, [the client] has had > 15 different attorneys represent her in a half-dozen matters ranging from a divorce in probate court to a lender liability action in [F]ederal court with the same pattern: she hires an attorney, works him or her until she stops paying the bill, fires that attorney and disputes the bill and files a [board] complaint, and then gets another attorney and starts the process again."

The hearing committee found these statements to be knowingly false "[w]ith a few minor exceptions." In particular, the hearing committee found that there was no evidence of the alleged pattern of hiring an attorney, not paying the bill, firing the attorney, and disputing the bill. There was also no evidence that the client had filed any complaints with the board, other than the one against Diviacchi. At the hearing, Diviacchi was asked to provide the basis for these statements, and he was unable to do so.

3. _Proceedings below_. Based on these findings, the hearing committee and the board both concluded that Diviacchi's conduct violated the rules of professional conduct as charged. In particular, the hearing committee found that Diviacchi

> (1) violated Mass. R. Prof. C. 1.5 (f) by entering into a contingent fee agreement that included provisions not contained in Form A or B without explaining these provisions to the client and without obtaining her informed consent, confirmed in writing;

> (2) violated Mass. R. Prof. C. 1.1, 1.2 (a), and 1.3 by refusing to further the client's lawful objective of attempting to halt the foreclosure, a goal that he knew was important to the client, because doing so would risk harm to the predatory lending counterclaim which he hoped would be the source of his fee, by refusing to meet and talk with the client despite her begging, by refusing to participate

in settlement discussions, and by unilaterally limiting his representation despite describing himself as "counsel of record for all purposes" in his Federal court appearance;

(3) violated Mass. R. Prof. C. 3.3 (a) (1) and 8.4 (c) by knowingly making false statements of material fact to both the Federal court and the BMC, as detailed above; and

(4) violated Mass. R. Prof. C. 1.5 (a) by claiming in the Federal court and the BMC that the client owed him approximately $96,000 in attorney's fees, where no contingency on which to ground such recovery had occurred and where the attorney-client relationship had effectively ended well before the sale of the house, a transaction in which Diviacchi did not participate in any event.

The board upheld each of these conclusions, as did the single justice.

In addition, the hearing committee found no factors in mitigation and several in aggravation, including prior discipline, Diviacchi's experience as an attorney, his motivation of personal gain, his "unnecessarily combative and vengeful" attitude toward the client,[4] and his lack of remorse or understanding of his misconduct. The board and the single justice upheld these findings.

For this serious misconduct, the board recommended that Diviacchi be suspended from the practice of law for twenty-seven months.

4. <u>Discussion</u>. The case is now before us on Diviacchi's preliminary memorandum, pursuant to S.J.C. Rule 2:23 (b), as appearing in 471 Mass. 1303 (2015) (Appeals in Bar Discipline Cases). That rule requires

"the appellant to demonstrate . . . that there has been an error of law or abuse of discretion by the single justice; that the decision is not supported by substantial evidence; that the sanction is markedly disparate from the sanctions imposed in other cases involving similar circumstances; or

---

[4] This attitude is much in evidence in Diviacchi's preliminary memorandum, which is replete with invective toward the client, as well as disdain for the hearing committee and the board.

that for other reasons the decision will result in a substantial injustice."

Diviacchi has not carried his burden under the rule. First, Diviacchi takes issue with the findings of fact. He argues that the hearing committee improperly credited the client's account of the facts over his own version. We will not disturb the hearing committee's credibility determinations. "The hearing committee . . . is the sole judge of credibility, and arguments hinging on such determinations generally fall outside the proper scope of our review." Matter of McBride, 449 Mass. 154, 161-162 (2007), citing Matter of Abbott, 437 Mass. 384, 394, (2002). See S.J.C. Rule 4:01, § 8 (5) (a), as appearing in 453 Mass. 1310 (2009). "The subsidiary findings of the hearing committee, as adopted by the board, 'shall be upheld if supported by substantial evidence,' see S.J.C. Rule 4:01, § 18 (5), as appearing in 453 Mass. 1315 (2009), and the hearing committee's ultimate 'findings and recommendations, as adopted by the board, are entitled to deference, although they are not binding on this court.'" Matter of Weiss, 474 Mass. 1001, 1001 n.1 (2016), quoting Matter of Ellis, 457 Mass. 413, 415 (2010).

Diviacchi further argues that documentary evidence in the record supports his version of the facts. He has not shown, however, that the record lacks substantial evidence in support of the hearing committee's findings. Moreover, none of his arguments on this point casts doubt on the key findings establishing his violations of the rules of professional conduct, including that he failed to explain his contingent fee agreement to the client, failed to obtain her informed consent before she signed it, refused to meet with her to discuss her case, failed to pursue her lawful objectives, swore to false statements of material fact in both State and Federal court, and attempted to collect an excessive fee where he did minimal work on the client's case and where the contingency did not occur.

Diviacchi's legal contentions fare no better. As to his violations concerning the contingent fee agreement, see Mass. R. Prof. C. 1.5 (f), he argues that the client was sophisticated and that this should have been considered in determining whether she had given informed consent. The rule, however, is clear that "[a] lawyer who uses a form of contingent fee agreement that contains provisions that materially differ from or add to those contained in Forms A or B shall explain those different or added provisions or options to the client and obtain the client's informed consent confirmed in writing" (emphasis added). Mass. R. Prof. C. 1.5 (f) (3). Diviacchi did not do

so.  The rule makes no exceptions for clients of varying levels of sophistication; it applies uniformly to all individual clients.[5]

As to his violation of rule 1.5 (a) by attempting to charge or collect an excessive fee, Diviacchi argues that the hearing committee, board, and single justice all improperly evaluated the fee with the benefit of hindsight rather than as of the time the contingent fee agreement was executed.  In the circumstances of this case, however, Diviacchi's violation was not that the fee contemplated by the agreement was unreasonable.  The hearing committee found that the contingency called for in the agreement did not occur.  The client recovered nothing on her counterclaim.  Any funds obtained by the client did not come from her adversary in the Federal court litigation, but from the third party to whom she sold the property, a transaction with which Diviacchi did not assist.  We agree with the committee, board, and single justice that the fee agreement did not cover this eventuality.

As to the violations of rules 1.1, 1.2, and 1.3, Diviacchi argues that he simply declined to file motions and a petition for bankruptcy that were, in his professional judgment, meritless.  The single justice found this argument unpersuasive, as do we.  The violations of these rules were not based merely on his not filing any particular motion or petition, but on his persistent refusal to take any action in furtherance of the client's clear desire to avoid foreclosure.  Moreover, he refused to participate in settlement negotiations and refused to meet with the client to discuss her case.  We agree that Diviacchi violated the rules as charged.

On a related point, Diviacchi complains that the hearing committee made its determinations without regard for his proffered expert testimony concerning the complexity of the legal issues involved in the client's case.  Putting aside his intemperate remarks disparaging the hearing committee's qualifications to decide this matter, it is clear that expert testimony is not necessary to determine whether an attorney has

---

[5] On a related point, Diviacchi argues that the rule improperly requires that deviations from the model forms be explained to an individual client but not to a client that is an organization.  Mass. R. Prof. C. 1.5 (f) (4).  The rule exists for the protection of clients, and we reject the assertion that there is no rational basis to provide greater protection to individual clients than to organizational clients.

violated the rules of professional conduct. See <u>Matter of Crossen</u>, 450 Mass. 533, 570 (2008), quoting <u>Fishman</u> v. <u>Brooks</u>, 396 Mass. 643, 650 (1986) ("'[e]xpert testimony concerning the fact of an ethical violation is not appropriate' in bar discipline proceedings because the fact finder does not need assistance understanding and applying the ethical rules"). In any event, even accepting Diviacchi's representations that the client's case involved "convoluted and esoteric issues of lender liability law," the charge against Diviacchi was not that he lacked the ability to handle such issues competently, but that he wilfully disregarded his client's interests. Similarly, the asserted complexity of the issues has no bearing on whether Diviacchi was entitled to collect a contingent fee where the contingency did not occur.

As to his violations of rules 3.3 and 8.4 by making sworn false statements to court, Diviacchi maintains, without citation to authority, that his statements should be evaluated under a subjective, good faith basis standard. That is not the law. "[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer <u>knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry</u>" (emphasis added). Mass. R. Prof. C. 3.3 comment 2.[6] Diviacchi's false allegations about the client's supposed "standard habit and business routine of dealing with lawyers" were made on his own behalf and purportedly on his own personal knowledge. The allegations were found by the committee to be false. Diviacchi has offered no evidence that he conducted a reasonably diligent inquiry prior to making them.

Diviacchi also complains that a hearing committee member was absent for a portion of the hearing. As the single justice noted, § 3.7 (c) of the Rules of the Board of Bar Overseers permits a hearing to proceed in the absence of any member of the committee so long as a quorum is present. We perceive no violation of due process in this procedure.

Finally, as to the proper sanction, a suspension of twenty-seven months is not "markedly disparate from the sanctions imposed in other cases involving similar circumstances," particularly those in which attorneys made false statements under oath to one or more courts. S.J.C. Rule 2:23 (b). See

---

[6] This language is in comment 3 of the current version of Mass. R. Prof. C. 3.3.

Matter of Finneran, 455 Mass. 722, 731 n.13 (2010) (two-year suspension is "usual and presumptive" sanction for giving false testimony); Matter of Shaw, 427 Mass. 764, 764, 768-769 (1998) (imposing two-year suspension where attorney "made false statements under oath, filed a false affidavit in court proceedings, and issued false and misleading opinion letters signed under oath to which he forged the notarization of another attorney").  Diviacchi does not suggest otherwise.  We conclude on all the facts and circumstances of this case that Diviacchi was properly suspended from the practice of law for twenty-seven months.

     5.  Conclusion.  The order of the single justice suspending the respondent from the practice of law for twenty-seven months, effective January 2, 2016, is affirmed.

                         Judgment affirmed.


     The case was submitted on the papers filed, accompanied by a memorandum of law.

     Valeriano Diviacchi, pro se.